49 CCPA

**CLINTON DETERGENT COMPANY,**
Appellant,

v.

**The PROCTER & GAMBLE COMPANY,**
Appellee.

**Patent Appeal No. 6753.**

United States Court of Customs
and Patent Appeals.
May 18, 1962.

Marzall, Johnston, Cook & Root, Lloyd C. Root and Daniel V. O'Keefe, Chicago, Ill., for appellant.

Allen & Allen, and John W. Melville, Cincinnati, Ohio, for appellee.

Before WORLEY, Chief Judge, RICH, MARTIN, and SMITH, Judges, and Associate Judge JOSEPH R. JACKSON, Retired.

SMITH, Judge.

The Clinton Detergent Company, appellant, applied to register the mark CARJOY on the Principal Register for "combined cleansing and polishing materials." [1] Use in interstate commerce since June 20, 1956, is asserted.

The Procter & Gamble Company, appellee, opposed the registration on the grounds of likelihood of confusion or deception of purchasers as to source or origin of the goods, citing its registrations of the single word JOY for "soap powder" [2] and for "sudsing cleaner, cleanser and detergent, excepting soap in bar form." [3] This latter registration is of the mark used on appellee's well known mild liquid detergent used primarily for washing dishes. Opposer in its notice of opposition asserts use since June 19, 1920.

The Trademark Trial and Appeal Board sustained the opposition, and found that the goods of both parties are detergents, which, although primarily intended for different uses, are recommended and could be used in common cleaning applications. The board concluded, 126 USPQ 204, 205:

"Applicant's mark 'CARJOY' includes opposer's mark 'JOY' in its entirety, the added matter 'CAR' merely described the object on which the applicant's product is intended to be used. Purchasers familiar with 'Joy' detergent might well assume, upon encountering applicant's detergent car wash in the same market place, that 'CARJOY' is a detergent product manufactured and sold by the producer of 'JOY' detergents specifically for use on cars. It is concluded that there is a likelihood of confusion or mistake or deception of purchasers.

The issue to be determined here is whether the conclusion of the board is correct. The board based its conclusion on similarities of the goods as well as on the similarity of the marks.

We shall first consider the similarities of the goods. The record contains much testimony devoted to the similarities and dissimilarities of the goods on which the marks are used. Appellant offered testimony to support its assertion that its product CARJOY is different from opposer's product JOY because it is unsuitable for general dishwashing use due to the presence of a minute amount of wax in the solution. Appellee offered testimony in the form of reports of laboratory analyses, made in its laboratories, which indicate that there is little or no wax in the CARJOY samples tested. From these reports, appellee argues that the product CARJOY is primarily a detergent, and although not especially effective as a dishwashing agent, can be used as such and therefore that the products CARJOY and JOY are directly competitive.

We think that the board correctly found that the two products, while not primarily intended for the same use, may be used for identical purposes. We find further support for this conclusion in the statement appearing on the facsimile of the JOY label attached to opposer's Notice of Opposition which states that JOY is recommended for:

"Refrigerators and ranges . Windows and mirrors . Bath tile and fixtures . Linoleum . Painted walls and woodwork"

and in applicant's Exhibit 3, a 1959 CARJOY bottle which carries a label stating:

"CARJOY can be used to keep linoleum and plastic tile surfaces sparkling clean and bright."

1. Serial No. 43,376, filed January 3, 1958.

2. No. 137,644 registered November 30, 1920, to appellee's predecessor, renewed for twenty years on November 30, 1940.

3. No. 522,721 registered March 21, 1950.

The record establishes that these similar products are sold primarily to housewives through supermarkets. Taken as a whole, the record establishes that CARJOY and JOY compete in the same markets for the same class of purchasers as detergent cleaning agents recommended for identical uses on linoleum as well as for other related uses. We therefore agree that the goods are similar.

We shall now consider the similarity of the marks. When the marks are compared in their entireties, it is seen that the similarity of the marks resides in their common use of the word "joy."

The record shows that applicant's addition of the word "car" to the word "joy" to produce its mark CARJOY came after opposer's mark JOY had acquired distinctiveness as opposer's trademark for its detergent cleanser. Applicant has made no showing from which we can reasonably find that the composite word mark CARJOY has such differences in sound, appearance and meaning that there is no likelihood of confusion, mistake or deception of purchasers. On the contrary, the record establishes that purchasers had recognized JOY as opposer's trademark. We think, therefore, the mark CARJOY would connote or suggest to an average purchaser the use of JOY detergent cleaner as a car cleaner. The suggested uses for CARJOY as previously referred to indicate that while it is primarily a car cleaning material, it is, like JOY, also intended for more general uses. In our opinion, applicant's mark CARJOY on a detergent cleaner will likely be thought by some purchasers to indicate that the goods emanate from the same source or origin as opposer's closely related JOY product.

■ Applicant asserts that the word "joy" cannot be exclusively appropriated as a trademark and in support of this position has introduced in evidence as applicant's Exhibit 7 some 63 third party registrations. These registrations indicate that the word "joy" by itself as well as in combination with other words and designs has been registered by various registrants for a wide variety of goods. Such third party registrations are evidence which we consider with other pertinent evidence on the issue of alleged distinctiveness of the mark. Shoe Corporation of America v. Juvenile Shoe Corporation of America, 266 F.2d 793, 46 CCPA 868. Such registrations, however, are not conclusive evidence on this issue.

Applicant has directed our particular attention to third party registration No. 387,283 of JOY SUDS for "Preparation used in the bath having water softening and skin beautifying properties," and has offered as its Exhibit 5 a can of JOY SUDS which is a "bubble bath" in powdered form. Applicant also has directed our attention to two other third party registrations, No. 165,142, JOY-SNYTH and No. 275,953, LATHER JOY, both for shaving creams. We have examined the remaining 60 third party registrations in the record, and find that 11 are for the word "joy" alone, for various goods ranging from coal to sterling silver tableware, while the others show the word "joy" combined with various words or syllables for a wide variety of goods ranging all the way from smoking and chewing tobacco to baby creepers.

We think that the introduction by applicant of such third party registrations and the testimony of its single witness directed to establishing what is at best a superficial difference in the goods is not sufficient to negative the likelihood of confusion, mistake or deception of purchasers.

■ Opposer, however, has the burden of proof to establish that applicant does not have the right to register its mark. Societe Anonyme Marne Et Champagne v. Myers, 250 F.2d 374, 45 CCPA 755. Opposer here has sustained this burden of proof and has overcome the evidence offered by applicant by way of the third party registrations on the issue of the asserted lack of distinctiveness of the word "joy."

Opposer's first witness was a research chemist employed by opposer. His testimony was limited to an analysis of the composition and dishwashing abilities of

applicant's product CARJOY from which it is clear that the products JOY and CARJOY are related products recommended for some of the same as well as related end uses.

Opposer's second witness, Payne, was a "brand promotion manager" for a number of Proctor & Gamble products, including JOY. He had been "involved directly with the JOY brand since October 1, 1953" and [4] testified that throughout his six years of "exposure to JOY," the advertising and sales promotion expenses in the various advertising media amounted to "several million dollars" annually.

Payne was shown two letters, opposer's Exhibits 18 and 19, which were "unsolicited" letters from consumers. Each letter was to the effect that the writer wished to purchase or inquire about CARJOY which they assumed was made by Procter & Gamble. Applicant's attorney objected to the letters being read into the record on grounds of hearsay, not best evidence, and lack of a proper foundation and also objected to Payne's statement that he was aware of similar letters being received by Procter & Gamble from time to time. While we think these letters are admissible, they are of very little evidentiary value as showing either significant confusion or the likelihood thereof. The weakness of such letters as evidence begins with the failure of opposer to show the total number of letters from customers from which these two were selected. We think that these letters are at best but two instances of actual confusion. Such isolated instances are of so little weight as evidence of significant confusion that we are unwilling to predicate a finding of either actual or likely confusion on such evidence alone.

Opposer's third witness testified that sales of JOY have exceeded one million cases of either 9, 12 or 24 bottles each year since 1950,[5] with the later years showing substantial increase over the earlier years.

■ We think opposer's evidence as a whole establishes that despite the third party registrations, opposer's mark JOY had acquired great distinctiveness and was a strong mark.

We have no doubt that when first used by opposer, the mark JOY may have had so little distinctiveness that it was, at best, a weak indicator of source or origin of the goods on which it was used. The present record shows how, by extensive use and advertising, opposer has converted it into a mark by which the average purchaser is likely to know that the detergent cleanser on which it is used is the product of opposer. We think it likely that such a purchaser, seeing applicant's mark on its closely related goods, would think such goods were the goods of opposer or at least of the producer of JOY, whoever it may be. No hard and fast line can be drawn and no general rule can be enunciated by which one can determine precisely where a word such as "joy" acquires such distinctiveness that it can function as a mark indicating a particular producer as the source or origin of such goods. Each case must stand on its own record. Under the circumstances of this case, applicant, as the late comer, adopts at its peril a similar mark for such closely related goods. United States Time Corp. v. Tennenbaum (Tennenbaum & Co., Telix Watch, Assignee, Substituted), 267 F.2d 327, 46 CCPA 895.

■ We, therefore, agree with the conclusion of the board that:

"The goods of the parties are both detergents which are sold in the same retail outlets to the same class of purchasers. Albeit opposer's product is primarily intended for washing dishes and applicant's for

---

4. It is to be recalled in this connection that the first use of CARJOY by applicant is alleged to be June 4, 1956, with first use in interstate commerce alleged as June 20, 1956.

5. It is to be noted that this is some six years prior to applicant's adoption of its mark.

washing cars, both products are recommended for cleaning other surfaces. The goods of the parties, clearly are of such nature that, if sold under the same or similar marks, the purchaser would likely assume that they originate with a single producer."

■ Where, as here, the distinctive mark of the first user is adopted in its entirety as a part of the late comer's mark, such appropriation cannot be sanctioned on the basis of third party registrations. In such cases a decision can be reached only by weighing all the evidence from which to determine the likelihood of confusion, mistake or deception of purchasers arising from applicant's use of its mark on its goods. In such a weighing here, the third party registrations have not overcome the showing of distinctiveness made by opposer.

■ Applicant also contends that opposer should not prevail because of alleged acquiescence by opposer in applicant's use of its mark and because of laches. We have examined the record on these contentions and find them to be without merit. We, therefore, agree with the statement of the board:

"It is clear that opposer did not unequivocally acquiesce in applicant's use of 'CARJOY' per se, the subject matter of the application. Rather opposer had agreed to applicant's use of 'CARJOY' in conjunction with applicant's trade name and only then on the condition that such use would prevent any confusion. Opposer did not foreclose future objections to applicant's use of 'CARJOY' when and if 'instances of actual confusion' should come to its attention. Notwithstanding the conditional nature of the purported acquiescence, applicant persisted in the use of 'CARJOY' without regard to future actions of opposer and the acts thereafter taken by applicant in respect of the promotion and use of 'CARJOY' were in furtherance of its final position that there was no likelihood of confusion, and were not dependent on the future actions of opposer. Opposer has not been guilty of acquiescence or laches."

For the foregoing reasons, the decision of the board is affirmed.

Affirmed.

MARTIN, Judge, sat but did not participate because of illness.