**LEONARD PIPELINE CONTRACTORS, LTD. Petitioner–Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent– Appellee.**

**No. 97–70227.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 12, 1998.

Decided April 24, 1998.

Timothy Berg, Fennemore Craig, Phoenix, Arizona, for Petitioner–Appellant.

Anthony T. Sheehan, Department of Justice, Tax Division, Washington, DC, for Respondent–Appellee.

Before: WHITE,* Justice, and NOONAN and THOMAS, Circuit Judges.

NOONAN, Circuit Judge:

Leonard Pipeline Contractors, Ltd. (the Taxpayer) appeals the judgment of the United States Tax Court limiting the deduction of reasonable compensation to its president, Richard L. Leonard, for the tax year 1987 to $700,000. The case involves the meaning of "reasonable" in the familiar and fundamental statute, 26 U.S.C. § 162, governing the deduction of compensation as an expense of doing business. Holding that the Tax Court has not furnished an adequate explanation of what it finds reasonable, we reverse and remand.

### FACTS

Richard L. Leonard is a forty-year veteran of the pipeline industry. He formed the Taxpayer in 1977. At all relevant times he was its president, chief operating officer and chief financial officer. Its board of directors consisted of him and his son. Its stock was wholly owned by R.L. Leonard Holdings, Limited, whose stock in turn was wholly owned by him.

In the period 1978 through 1987 the Taxpayer had gross revenues of $123,124,905 and

---

* The Honorable Byron R. White, Retired Associate Justice, United States Supreme Court, sitting by designation.

net income for the period of $1,750,958. In the years 1985 through 1986 the Taxpayer was involved in coating, insulating and wrapping 325 miles of pipeline in Texas, Arizona and California (the All American Pipeline project), which was the major source of its income during these years. In 1991 Leonard pleaded guilty to an information charging him with the federal felony of mail fraud in making payments to Ronald L. Hinn, the president of All American Pipeline Company, in order to secure contracts with All American Pipeline, a scheme which involved the setting up of a shell corporation, Consulting Technologists, Inc. and the furnishing of false invoices to Leonard and his payment of these false invoices to Consulting Technologists, Inc., which forwarded the payments to Hinn and other officers of All American Pipeline.

In 1987 the All American Pipeline project was completed and the sole activity of the Taxpayer was receiving payments on that contract. Leonard decided to retire. As early as February 1987 he had consulted an accountant, who in turn consulted Arthur Andersen and Co., as to what would be an appropriate bonus. On September 28, 1987 the board of directors of the Taxpayer adopted a resolution noting that it was through Leonard's efforts that the Taxpayer had been "placed on the bidding list for All American Pipeline Co."; that Leonard had developed a new insulation process "which process was ultimately successful in securing the All American contract"; that Leonard had secured a joint venturer for the project; that Leonard had personally guaranteed the bank financing of the project; and that in 1985 and 1986 Leonard had received no compensation from the Taxpayer due to credit restrictions placed by the bank financing the project. In the light of these considerations the board voted to pay Leonard a bonus of $1,680,000. His salary was $97,800, so his total compensation came to $1,777,800.

Another relevant event in 1987 was that Leonard and his wife were divorced. They entered into a property settlement by which Leonard agreed to provide her money and property valued at at least $1,680,000.

## PROCEEDINGS

The Commissioner of Internal Revenue (the Commissioner) determined that of Leonard's total compensation only $135,207 was reasonable. The remainder of the claimed deduction was disallowed; that is, only $37,-207 of the bonus was treated as deductible. In December 1991 petitioner filed this petition in the Tax Court contesting the disallowance.

A number of facts were stipulated by the parties. Each side presented experts as to the reasonableness of Leonard's bonus. In 1994, three years after the petition had been filed, the case went to trial. After the Commissioner had rested, but before rebuttal testimony, the Tax Court judge went off the record and told the parties the case should settle; he then met in chambers for fifteen minutes with experts for both sides without counsel. After this meeting the judge urged counsel and Leonard to settle, and he followed up this suggestion on two occasions after the trial had ended, vigorously promoting with counsel the idea of settlement. He also took additional information from the experts for both sides, information that had not been presented at trial and was not admitted into evidence until the judge sua sponte at the hearing on the Taxpayer's motion for reconsideration ordered its admission. At the hearing on this motion the judge again strenuously pushed his proposal that the parties should settle.

In July, 1996, over two years after the trial, the judge issued an opinion. In October, 1996 the judge denied the motion for reconsideration. Four months later, on February 7, 1997 he entered judgment in accordance with his July 1996 opinion. The opinion set out the five factors that this circuit has indicated should measure the reasonableness of compensation. *Elliotts, Inc. v. Comm.,* 716 F.2d 1241 (9th Cir.1983). The judge found that in terms of the first factor, the compensated employee's role in the company, Leonard had been "the driving force." As to the second factor, external comparison, the judge considered the conflicting expert opinions and found those offered by the Commissioner's expert to be based on data from businesses "not sufficiently similar" to the

petitioner's and those offered by the Taxpayer's two experts to be "not convincing because they were not objective and simply promoted Petitioner's position." As to the third *Elliotts* factor, the character and condition of the company, he noted that the ratio of the bonus to the petitioner's taxable income before the deduction was 34 percent and held that that was "reasonable" in light of Leonard's work for the Taxpayer over the years. The fourth factor, a potential conflict of interest, he found existed in Leonard's control of all of the Taxpayer's stock but that for 1987 the return on investment would have satisfied an independent hypothetical investor—*Elliotts'* suggested test; he pronounced this factor "neutral." The final factor was whether the compensation was paid according to a structured, formal and consistently applied program. The judge did not find such a program existed and held that the bonus "was partially an attempt to recoup from petitioner part of the payments Mr. Leonard had made pursuant to his divorce settlement." On the other hand, the judge found the compensation was paid in part to correct prior undercompensation; he treated the fifth factor as neutral.

Having set out the five factors, the judge declared:

> Any attempt to determine reasonable compensation with mathematical precision is impossible [citations omitted]. Using our best judgment, we conclude $700,00 would represent a reasonable amount of compensation ... for 1987. The $700,000 amount represents $300,000 as a lump sum retirement payment and $400,000 for salary and bonus.

The Taxpayer appeals.

## ANALYSIS

### The Opaque Opinion of the Tax Court.

Section 162(a) of the Internal Revenue Code provides a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." Subsection (1) specifies that the deduction includes "a reasonable allowance for salaries or other compensation for personal services actually rendered." We are conscious of the difficulty of articulating clearly why a particular amount is reasonable. Congress has simplified matters in the case of publicly-held companies by making one million dollars the normal measure, I.R.C. § 162(m), but has left open for more individual determination in the more sensitive area of compensation in closely-held companies.

■ "Reasonableness" of compensation seems to depend to a degree on the eye of the beholder. The difficulty is increased when the payment is a bonus for services already rendered. It might even be asked if such a payment is a "necessary" expense as the statute requires. But for over sixty years the income tax law has been interpreted to permit the payment of a bonus for services supplied in the past but inadequately compensated then. *Lucas v. Ox Fibre Brush Co.*, 281 U.S. 115, 120, 50 S.Ct. 273, 274–75, 74 L.Ed. 733 (1930). That interpretation is too firmly fixed to be questioned. Even if the Commissioner wanted to behave like Scrooge before his reformation, he could not challenge the practice of taking into account past services and rewarding them when a valued employee retires. Nonetheless, since such compensation is not compelled by contract and is retrospective, its character increases the difficulty of determining its reasonableness.

■ Despite the difficulties of determining what is reasonable compensation, it is the obligation of the Tax Court to spell out its reasoning and to do more than enumerate the factors and leap to a figure intermediate between petitioner's and the Commissioner's. We can see the pieces of the puzzle. We can only guess how the trial judge put them together. It is not impossible for us to review such a decision, but we could do so only by supplying a synthesis that it is the Tax Court's duty to provide. A reasoned decision as to what is reasonable in this context must bring together the disparate elements and give some account of how the judge has reached his conclusion. We have held district courts to this standard. *United Nat'l Ins. Co. v. R & D Latex Corp.*, 141 F.3d 916, 919–20 (9th Cir.1998); *Stewart v. Gates*, 987 F.2d 1450, 1454 (9th Cir.1993); *Townsend v.*

*Holman Consulting Corp.*, 929 F.2d 1358, 1366 (9th Cir.1990) (en banc). Not less is expected from the Tax Court. *Akers v. Comm'r.*, 798 F.2d 894, 897 (6th Cir.1986).

■ It is not our task to put the factors together in the first instance and come up with what is reasonable compensation. The burden of proof remains on the Taxpayer to show that the Commissioner's determination was wrong. *Welch v. Helvering*, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933); *Durando v. United States*, 70 F.3d 548, 550 (9th Cir.1995). The regulation notes, as does our case law: "An ostensible salary paid by a corporation may be a distribution of a dividend on stock." 26 C.F.R. § 1.162–7(b); *Elliotts*, 716 F.2d at 1246. Bearing in mind the burden on the Taxpayer, the Tax Court must determine what, if any, factors, have been demonstrated so as to require a setting aside of the Commissioner's determination, the recognition of a right to increased compensation, and the establishment of an amount qualifying as reasonable under § 162(a)(1).

*The Procedural Questions.*

The Taxpayer has asserted that the way in which the Tax Court consulted ex parte with the experts and urged settlement on the parties was misconduct and in itself requires reversal. We find it unnecessary to pass on these contentions as a remand is in order. We are confident from the comments of the Tax Court judge on the motion for reconsideration that he is aware of the dangers of overstepping his role in urging settlement upon the parties and that he would not again consult the experts in the absence of counsel. The case has proceeded with unusual deliberateness in the Tax Court where it took six years to come to judgment. It should be speedily resolved.

**REVERSED and REMANDED.**