**CHAMPAGNE LOUIS ROEDERER, S.A., Appellant,**

v.

**DELICATO VINEYARDS, Appellee.**

**No. 98–1032.**

United States Court of Appeals, Federal Circuit.

July 16, 1998.

Rehearing Denied Sept. 11, 1998.

**1374**

Julius Rabinowitz, Hughes Hubbard & Reed LLP, of New York City, argued for appellant. With him on the brief was Perla M. Kuhn.

Michael A. Grow, Arent Fox Kinter Plotkin & Kahn, of Washington, DC, argued for appellee. With him on the brief was I. Steven Siglin, Jr. of Costa Mesa, California. Of counsel was Cristina A. Carvalho, Arent Fox Kinter Plotkin & Kahn, of Washington, DC.

Before MAYER, Chief Judge, MICHEL and LOURIE, Circuit Judges.

Concurring opinion filed by Circuit Judge MICHEL.

PER CURIAM.

## DECISION

Champagne Louis Roederer, S.A. ("Roederer") appeals from a decision in an opposition proceeding by the Trademark Trial and Appeal Board of the Patent and Trademark Office (the "Board"). *See Champagne Louis Roederer, S.A. v. Delicato Vineyards,* Opposition No. 80,932 (TTAB June 25, 1997). Delicato Vineyards' ("Delicato") predecessor in interest filed application serial no. 73/701,-485 to register the word mark "CRYSTAL CREEK" for wine. Roederer filed an opposition to the registration based on its two marks—the word mark "CRISTAL," and the mark "CRISTAL CHAMPAGNE" with accompanying graphic design. The Board dismissed Roederer's opposition after determining that the application mark was not confusingly similar to either of Roederer's marks. Because we conclude that Roederer failed to demonstrate any error in the Board's legal analysis or ultimate legal conclusion regarding likelihood of confusion, or clear error with respect to any of its findings on the individual *DuPont* factors, we must affirm.

## DISCUSSION

■ We evaluate for correctness the Board's ultimate legal conclusion as to the likelihood of confusion between the application and opposer's marks, but we review the underlying factual findings of the Board for clear error. *See Kenner Parker Toys v. Rose Art Indus.,* 963 F.2d 350, 352, 22 U.S.P.Q.2d 1453, 1455 (Fed.Cir.1992); *Weiss Assocs. v. HRL Assocs.,* 902 F.2d 1546, 1547–48, 14 U.S.P.Q.2d 1840, 1841 (Fed.Cir.1990).

■ Although the opposition proceeding, and thus the record, was characterized by a lack of evidence on many of the *DuPont* factors, the Board did, to the extent it was presented with evidence, assess the thirteen factors enumerated by one of our predecessor courts as constituting the test for likelihood of confusion. *See Application of E.I. DuPont DeNemours & Co.,* 476 F.2d 1357, 1361, 177 U.S.P.Q. 563, 567 (CCPA 1973). Specifically, the Board found or presumed that the class of goods for which the marks were used were the same (wine, including champagne), that those goods traveled in the same trade channels, and that the goods were purchased by the same or similar customers. *See Champagne Louis Roederer,* slip op. at 8–9. Certainly there were no restrictions in the application that would support any contrary findings. The Board also found that Roederer's marks had "come to serve as a very strong indication of origin for [its] champagne." *Id.* at 9. The Board, however, treated the dissimilarity of the marks

with respect to appearance, sound, significance, and commercial impression as the dispositive *DuPont* factor, concluding that this dissimilarity alone precluded any reasonable likelihood of confusion. *See id.* at 11. Specifically, as to significance, the Board found that the word marks "CRISTAL" and "CRYSTAL CREEK" evoked very different images in the minds of relevant consumers: while the former suggested the clarity of the wine within the bottle or the glass of which the bottle itself was made, the latter suggested "a very clear (and hence probably remote from civilization) creek or stream." *Id.* at 12. The Board then found that the appearance and sound of the competing marks were also dissimilar. *See id.* at 13. Based on these three underlying findings on this single *DuPont* factor, the Board dismissed the opposition because of the difference in commercial impressions it found were created by the marks.

We must affirm, for Roederer on appeal merely restates its arguments from the opposition, which primarily concern the appropriate weight to be given the various findings on the several *DuPont* factors considered by the Board, and has failed to demonstrate any reversible error in the Board's decision or foundational factual findings.

Roederer suggests, first, that it was an error of law for the Board to rely solely on the dissimilarity of the marks in evaluating the likelihood of confusion and to fail to give surpassing weight to the other *DuPont* factors, all of which were found to favor Roederer. We note, however, that we have previously upheld Board determinations that one *DuPont* factor may be dispositive in a likelihood of confusion analysis, especially when that single factor is the dissimilarity of the marks. *See, e.g., Kellogg Co. v. Pack'em Enters.*, 951 F.2d 330, 332–33, 21 USPQ2d 1142, 1144–45 (Fed.Cir.1991) (stating that "[w]e know of no reason why, in a particular case, a single *DuPont* factor may not be dispositive" and holding that "substantial and undisputed differences" between two competing marks justified a conclusion of no likelihood of confusion on summary judgment); *Keebler Co. v. Murray Bakery Prods.*, 866 F.2d 1386, 1388, 9 U.S.P.Q.2d 1736, 1739

(Fed.Cir.1989) (agreeing with the Board that the "more important fact for resolving the issue of likelihood of confusion ... is the dissimilarity in commercial impression between the marks"). We have not been persuaded that, on this record, the Board erred in concluding that the marks' dissimilarities were dispositive, notwithstanding due weight being accorded to the *DuPont* factors found in Roederer's favor.

Second, Roederer has failed to demonstrate any instance of clear error in the Board's factual findings with respect to the dissimilarities of the marks in appearance, sound, significance, or overall commercial impression. Although Roederer disagrees, chiefly, with the Board's interpretation of the commercial impression of the marks, even reasoned disagreement with such a finding does not, without more, establish that it is clearly erroneous. Although this opposition may have presented to the Board a close question with respect to the dissimilarities of the marks in sound, appearance, significance, and commercial impression, we remain unpersuaded that the Board made any clear error in its factual findings and thus we decline to disturb the Board's decision on this basis either.

Thus, because Roederer has failed to demonstrate any reversible factual or legal error, we must

*AFFIRM.*

MICHEL, Circuit Judge, concurring.

Although I agree with the outcome and rationale and thus join the opinion, I write separately to express my concern with the absence of analysis and resulting potential for uncorrectable legal error in the otherwise well-written Board opinion on the underlying question in this case: why the dissimilarity in the commercial impressions conveyed by the competing marks outweighs the Board's findings in favor of Roederer with respect to all other relevant *DuPont* factors, including the strength of Roederer's "very strong" senior mark and the similarity of Delicato's and Roederer's goods, customers, and channels of trade, between which the Board could "draw no distinctions." Not only do these factors

support the opposer but they diminish what he must prove in order to prevail.

I believe that, in general, the Board's expertise warrants great respect for its legal conclusion on likelihood of confusion even though clear error deference is limited to its underlying fact-findings. However, in the rare instances such as this in which the Board fails to provide adequate explanation of the reasoning on which it relied to reach its result, especially in the face of sharply conflicting findings, I question whether such respect is justified. To date, our court has said little on the subject of critical omissions in such opinions. The United States Court of Appeals for the District of Columbia Circuit, however, has made frequent reference to similar problems of analytical opacity in opinions in the context of the judicial review it is mandated to conduct of decisions by certain regulatory agencies. Most recently, for example, in *American Lung Association v. Environmental Protection Agency*, 134 F.3d 388 (D.C.Cir.1998), the court was asked to review an agency decision declining to strengthen existing air quality standards for sulfur dioxide. The court remanded the decision to the agency "to permit the Administrator to explain her conclusions more fully." *Id.* at 393. In reaching this outcome, the court first noted that "[j]udicial deference to decisions of administrative agencies ... rests on the fundamental premise that agencies *engage in reasoned decision-making.*" *Id.* at 392 (emphasis added). It went on to explain, however, that "[w]ith its delicate balance of thorough record scrutiny and deference to agency expertise, *judicial review can occur only when agencies explain their decisions with precision,* for '[i]t will not do for a court to be compelled to guess at the *theory underlying the agency's action ....'*" *Id.* (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196–96, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947)) (emphasis added).

Like regulatory agencies or other executive tribunals in their subject areas, the Trademark Trial and Appeal Board has acquired a high level of expertise in evaluating the *DuPont* factors and counter-weighing these factors to reach its ultimate conclusion—the likelihood *vel non* of confusion between competing marks. Nonetheless, the Board too should explain with reasonable "precision" not only its factual findings but the "theory underlying" its final conclusion. We need to be told and not be "compelled to guess at the theory" the Board applied to compare its conflicting findings and decide likelihood of confusion. Without such explanation we are hard-pressed to review independently, as we must, whether the Board's ultimate conclusion is legally correct. In such circumstances, we cannot assure ourselves that the Board did indeed "engage in reasoned decision-making."

To be sure, every opinion need not be perfectly clear or detailed. Indeed, there are many oppositions in which cursory treatment of the law and relevant facts is adequate. For example, in some cases the Board may only receive evidence relevant to a single *DuPont* factor. In such a circumstance, the finding under that one factor would clearly be dispositive, and little further discussion would be necessary. On the other end of the spectrum, some cases may involve extensive evidentiary presentations on many or all of the *DuPont* factors, but the Board might find all of the factors in favor of one of the parties in an opposition proceeding. Such cases would similarly require little explanation as to how the Board reached its decision on likelihood of confusion. Like the District of Columbia Circuit, then, we should "uphold an agency decision of less than ideal clarity if *the agency's path may reasonably be discerned.*" *Common Cause v. Federal Election Comm'n*, 906 F.2d 705, 706 (D.C.Cir. 1990) (emphasis added) (internal quotations and citation omitted). I believe, however, we should guard against affirming a Board decision that provides little insight into its "underlying theory" or "path," based merely on an assumption that, as an expert tribunal, it must have decided correctly.

Although we have not addressed this problem of opaque or incomplete opinions in the context of the Trademark Trial and Appeal Board, we have previously considered the difficulty they pose for appellate review of decisions of the Board of Patent Appeals and Interferences. In that context, we have explicitly held that, although we review deci-

sions and not opinions, to warrant affirmance of a decision on obviousness, the opinion "must contain sufficient findings *and reasoning to permit meaningful appellate scrutiny.*" *Gechter v. Davidson,* 116 F.3d 1454, 1458, 1460, 43 U.S.P.Q.2d 1030, 1033, 1035 (Fed.Cir.1997) (vacating decision and remanding for "specific findings of fact and conclusions of law adequate to form a basis" for appellate review) (emphasis added); *cf. Oakley v. International Tropic–Cal, Inc.,* 923 F.2d 167, 168, 17 U.S.P.Q.2d 1401, 1403 (Fed. Cir.1991) (vacating a preliminary injunction issued by the district court because its factual findings on the four *Hybritech* factors supporting the injunction were "so limited and conclusory that *meaningful appellate review* is not possible" (emphasis added)). I believe that similarly here, once it set forth its findings of fact with respect to each of the five *DuPont* factors it considered, the Board was further obligated to provide some brief analysis regarding the relatively little weight it chose to afford the four pro-confusion factors in determining, ultimately, no likelihood of confusion.

Other circuit courts have held expert tribunals they review to a similar obligation. Recently, for example, the United States Court of Appeals for the Ninth Circuit remanded for further explanation a United States Tax Court decision limiting a tax deduction based on an executive's reasonable compensation. *See Leonard Pipeline Contractors, Ltd. v. Commissioner of Internal Revenue,* 142 F.3d 1133 (9th Cir.1998). In a section aptly labeled "The Opaque Opinion of the Tax Court," the Ninth Circuit provided the following justification for the remand:

Despite the difficulties of determining what is reasonable compensation, it is the obligation of the Tax Court to spell out its reasoning and to *do more than enumerate the factors and leap to a figure intermediate* between petitioner's and the Commissioner's. We can see the pieces of the puzzle. We can only guess how the trial judge put them together. It is not impossible for us to review such a decision, but we could do so only by *supplying a synthesis* that it is the Tax Court's duty to provide. A *reasoned decision* as to what is reasonable in this context must *bring together the disparate elements and give some account of how the judge has reached* his conclusion. . . .

It is not our task to put the factors together in the first instance. . . .

*Id.* at 1135–36 (emphasis added); *cf. Public Media Ctr. v. FCC,* 587 F.2d 1322, 1331 (D.C.Cir.1978) ("Although our judicial duties demand great deference to agency expertise, we cannot defer, indeed we cannot even engage in meaningful review, unless we are told *which* factual distinctions separate arguably similarly situated licensees, and *why* those distinctions are important."). I see no reason why the Board should not be similarly obligated to "supply a synthesis" or "give some account of how [it] has reached" its conclusion so that we may engage in "meaningful appellate review." If the Board simply enumerates its findings on the various factors, pro and con, and then "leaps" to its ultimate conclusion on likelihood of confusion, we are greatly impeded in our review function.

Because the Board in this case failed to "supply a synthesis" of its conflicting findings that would enable us to "discern the path" to its ultimate conclusion, I initially wondered whether its conclusion of no likelihood of confusion in this case was correct. As our per curiam opinion notes, however, it is perfectly lawful for the Board to determine in an appropriate case that one *DuPont* factor outweighs all others and thus disposes of the question of whether competing marks are confusingly similar. It was not immediately clear to me from the Board's opinion, however, that this is such a case. *See Specialty Brands v. Coffee Bean Distributors, Inc.,* 748 F.2d 669, 671, 223 U.S.P.Q. 1281, 1282 (Fed. Cir.1984) (holding that, in some instances, the appearance, sound, and significance of the marks may be dispositive, "but the similarity between words in the respective marks is only part of the inquiry into likelihood of confusion"). Thus, the difficulty here arises, in my view, because the Board explicitly found that four of the *DuPont* factors weighed in Roederer's favor, but concluded nonetheless that the dissimilarities of the marks in appearance, sound, significance, and commercial impression weighed dispositively

in favor of Delicato. I for one am left wondering how the Board justified its disregard or diminution in weight of the four *DuPont* factors that it found supported Roederer's Opposition, for the Board has failed to "bring together the disparate elements" to explain the basis for its conclusion of no likelihood of confusion.

For example, the Board explicitly found that the "CRISTAL" mark "has come to serve as a *very strong* indication of origin" for Roederer's champagne. *See Champagne Louis Roederer,* slip op. at 9 (emphasis added). If Roederer's mark is so strong, however, why was the mere addition of the generic, topographical word "creek" in Delicato's application mark sufficient *to overcome any potential for confusion?* The Board provides no explanation. It may be that the Board determined this *DuPont* factor favoring Roederer was not entitled to any weight at all in this case, but there is no explanation as to why this should be. Furthermore, the Board's apparent failure to consider the strength of Roederer's mark conflicts with our case law, for we have held that "[w]hen an opposer's trademark is a strong, famous mark, it can never be of little consequence. The fame of a trademark may affect the likelihood purchasers will be confused inasmuch as less care may be taken in purchasing a product under a famous name." *Specialty Brands,* 748 F.2d at 675, 223 U.S.P.Q. at 1284 (internal quotations omitted); *see also J & J Snack Foods Corp. v. McDonald's Corp.,* 932 F.2d 1460, 1464, 18 U.S.P.Q.2d 1889, 1892 (Fed.Cir.1991) ("[P]reference is accorded the prior user of a mark or family of marks, as against a newcomer. The newcomer has the clear opportunity, if not the obligation, to avoid confusion with well-known marks of others."). It is not clear to me, therefore, whether the Board's failure expressly to attribute any significance to the strength of Roederer's mark shows it applied an improper standard and, if so, whether that was merely harmless error here.

Similarly, because of the absence of explicit limitations in the application, together with the failure by both parties to present other evidence, the Board explicitly found no basis upon which to "distinguish" the goods "as to price, channels of trade, or classes of purchasers." *Champagne Louis Roederer,* slip op. at 12. Nonetheless, there is no express indication that the Board even considered these three findings in reaching its ultimate conclusion that the marks are not confusingly similar or recognized that as a matter of law they change the analysis. Again, this failure may be especially significant in light of previous Board decisions holding that the degree of similarity between competing marks, where the goods on which the marks are used are directly competitive, need not be as great before registration should be denied. *See, e.g., Eci Div. of E–Sys., Inc. v. Environmental Communications Inc.,* 207 U.S.P.Q. 443, 449, 1980 WL 30140 (TTAB 1980) ("It is necessary to note at the outset that, where as here, the goods of the parties are similar in kind and/or closely related and travel in the same trade channels where they can be encountered by the same purchasers, *the degree of similarity of the marks under which these products are sold need not be as great* as in the case of diverse or different goods." (emphasis added)). If the Board did in fact fail to account for the similarity of the goods, trade channels, and customers in its analysis of the confusion issue, it may have consequently held Roederer to an inappropriately higher burden of proof than appropriate in such an opposition proceeding. Again, if it did err at law, how in the face of silence can we determine whether such error was harmless?

In short, there is no explanation of how one *DuPont* factor in Delicato's favor can be considered adequate to support the legal conclusion of no likelihood of confusion where four other *DuPont* factors support Roederer's assertion that the competing marks are so confusingly similar that Delicato's application for registration should be denied. Furthermore, the Board's failure to explain raises for me the question whether the Board failed to give the requisite legal significance to the factors it did consider. Thus, as this case illustrates, it is not always enough that the Board make findings with respect to each *DuPont* factor that is of record; some discussion of the relative weight to be accorded at least to conflicting factors is necessary, or the findings alone may be insufficient for

meaningful appellate review. In my view, the Board here failed to "explain its decision with precision," or even provide minimal landmarks such that its "path may reasonably be discerned" to those of us charged with reviewing its decision.

I am further troubled by some of the Board's particular factual findings with respect to the dissimilarity of the competing marks. For example, the Board, without any discussion at all, found that the marks were different in sound and appearance. *See Champagne Louis Roederer*, slip op. at 13 ("Moreover, there are differences between the marks in sound and appearance."). It failed, however, to identify the differences or explain why they were important. Because Delicato's application was not part of the record on appeal, we cannot evaluate the similarity of appearance of the marks for ourselves, and the Board presents no discussion of the visual differences it presumably found. Furthermore, in the context of word marks, I question how important the "sight" factor can be for the overall comparison of commercial impressions. Even more troubling, although the Board concluded that "there are differences between the marks in sound," *id.* at 13, it also found, inconsistently, that Roederer's "CRISTAL" mark would be interpreted by most consumers as a phonetic equivalent, i.e., a misspelling, of the word "crystal," *see id.* at 12, and that "a substantial segment of the purchasing public for goods of the type involved here would pronounce CRISTAL and CRYSTAL in a similar manner," *id.* at 11. This suggests to me at least that the most significant component of the two word marks in fact are quite *similar* in sound. These seemingly contra-

dictory findings, however, are never explained, must less reconciled, in the Board's opinion.[1]

Because, to all outward appearances, the Board here failed to give any weight to the similarity of the goods, customers, and trade channels or the strength of Roederer's senior marks, and instead relied solely on its highly subjective finding that the commercial impression of the marks were dissimilar to determine no likelihood of confusion, I was at first unsure of the correct resolution of this case. Thus, I hesitated to affirm the Board's decision to dismiss the Opposition because of the crucial omissions in the analytical framework in its opinion.

Nonetheless, despite my concerns as outlined above, I join the opinion affirming the Board because, as the opposer, Roederer bore the burden of proof before the Board. *See Sanyo Watch Co. v. Sanyo Elec. Co.*, 691 F.2d 1019, 1022, 215 U.S.P.Q. 833, 834 (Fed. Cir.1982) (holding that the opposer in a proceeding to test likelihood of confusion "bears the burden of proof which encompasses not only the ultimate burden of persuasion, but also the obligation of going forward with sufficient proof of the material allegations of the Notice of Opposition"); *see also Yamaha Int'l Corp. v. Hoshino Gakki Co.*, 840 F.2d 1572, 1579–80, 6 U.S.P.Q.2d 1001, 1007 (Fed. Cir.1988) (noting that because section 2(d) of the Lanham Act "provides that no trademark shall be refused unless it is shown that there is a likelihood of confusion with another mark, the requirement that the opposer both establish a prima facie case of likelihood of confusion and carry the ultimate burden of persuasion on that issue is proper"); *Clinton Detergent Co. v. Proctor & Gamble Co.*, 49

1. Although some may believe I am simply criticizing the Board's well-written thirteen-page opinion here as too short, I do not suggest that a longer opinion or one with a more extensive factual assessment was necessary to correct the omissions I see. To the contrary, I believe the Board's actual findings were sufficiently detailed, especially in light of the paltry evidence provided by the parties. Rather, I suggest the Board's opinion—and thus, our review function—would have benefited from at least some brief, analytical explanation for why several *DuPont* factors, properly of record and weighing in the opposer's favor, should be disregarded in favor of one factor weighing in the opposite direction. It is

precisely that intermediate analytical step, however, that a panel member on our court must evaluate most closely on appeal, for on the ultimate conclusion our review is non-deferential. Thus, a brief additional sentence or two would have greatly improved our ability to review, and thus our confidence in, the Board's ultimate decision here. Indeed, its opinion could actually have been shorter and yet still included the crucial analytical discussion. Nor need a better focused opinion have required more time or effort to write. Thus, there should be no concern for increasing delays or enlarging backlogs at the Board.

C.C.P.A. 1146, 302 F.2d 745, 747, 133 U.S.P.Q. 520, 522 (CCPA 1962) ("Opposer, however, has the burden of proof to establish that applicant does not have the right to register its mark."). The evidence Roederer presented to meet its burden before the Board was sparse and its persuasiveness questionable.

Moreover, decisions below are presumed correct. Thus, Roederer had the burden of persuasion on appeal as well. Yet Roederer has failed to persuade me that it met its burden at the Board level, or that the Board committed any legal, fact-finding, or other error that would warrant reversal of its ultimate conclusion of no likelihood of confusion. Thus, although the Board's opinion in this case presents something of a "black box," impervious to searching review on appeal, I agree to affirm. I do hope, however, that future Board opinions will not suffer from critical omissions such as the ones I have tried to identify here, but will instead focus on reconciling conflicting findings while perhaps omitting needless discussion. The result should be opinions that are shorter and quicker to write, yet will better facilitate meaningful appellate review.

