NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**CDOC, INC.,**
*Appellant*

**v.**

**LIBERTY BANKERS LIFE INSURANCE COMPANY, THE CAPITOL LIFE INSURANCE COMPANY,**
*Appellees*

---

2020-1643

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in Nos. 91236945, 91237330.

---

Decided:  February 23, 2021

---

EDWARD C. FLYNN, Eckert Seamans Cherin & Mellott, LLC, Pittsburgh, PA, for appellant.  Also represented by CHRISTINA D. FRANGIOSA, Philadelphia, PA.

TIMOTHY J. ZARLEY, Zarley Law Firm, P.L.C., Des Moines, IA, for appellees.

---

Before DYK, MAYER, and CHEN, *Circuit Judges*.

CHEN, *Circuit Judge*.

CDOC, Inc. (CDOC) appeals from a judgment of the Trademark Trial and Appeal Board (Board) dismissing its opposition to Liberty Bankers Life Insurance Company's (Liberty Bankers) registration of the mark LIBERTY BANKERS LIFE INSURANCE COMPANY and design, and its opposition to Liberty Bankers and the Capitol Life Insurance Company's (collectively, Appellees) registration of the mark LIBERTY BANKERS LIFE THE CAPITOL LIFE and design. *CDOC, Inc. v Liberty Bankers Life Ins. Co. & The Capitol Life Ins. Co.*, Nos. 91236945 and 91237330, 2020 WL 582932 (T.T.A.B. Jan. 16, 2020) (Board Opinion).

Finding that neither the LIBERTY BANKERS LIFE INSURANCE COMPANY mark and design nor the LIBERTY BANKERS LIFE THE CAPITOL LIFE mark and design are likely to cause confusion with CDOC's registered mark BANKERS LIFE, the Board dismissed CDOC's oppositions. *Board Opinion*, 2020 WL 582932, at *16. For the reasons set forth below, we *affirm*.

BACKGROUND

CDOC and Appellees are insurance companies offering life insurance, annuities, and supplemental health insurance, including Medicare supplement insurance. Appellant's Br. at 7; Appellees' Br. at 1. Appellees are both part of the Liberty Bankers Insurance Group. Appellees' Br. at 1.

CDOC is the owner of registered mark BANKERS LIFE (standard character form; U.S. Trademark Registration No. 892,222) for use in connection with insurance underwriting services in International Class 36. J.A. 179–80. The BANKERS LIFE mark was registered on June 2, 1970, with an asserted date of first use of the mark in commerce of July 13, 1968. *Id.* The mark is used by CDOC's wholly

owned subsidiary, Bankers Life and Casualty Company. Appellant's Br. at 2, 6.

On May 3, 2017, Liberty Bankers filed U.S. Trademark Application Serial No. 87/435,442,[1] seeking to register the mark LIBERTY BANKERS LIFE INSURANCE COMPANY and design, shown below, for underwriting and administration of life insurance, health insurance, and annuities in International Class 36. J.A. 329–30. The registration application claimed September 15, 2007 as Liberty Bankers's first use of the mark in commerce. *Id.* at 329.



On May 4, 2017, Appellees filed U.S. Trademark Application Serial No. 87/436,780,[2] seeking to register the mark LIBERTY BANKERS LIFE THE CAPITOL LIFE and design, shown below, for underwriting and administration of life insurance, health insurance, and annuities in International Class 36. J.A. 364–65. The registration application claimed September 15, 2007 as Appellees' first use of the mark in commerce. *Id.* at 364.



In 2017, CDOC filed oppositions asserting that Appellees' marks would likely cause confusion with CDOC's

---

[1]     This application is the subject of Opposition No. 91236945.

[2]     This application is the subject of Opposition No. 91237330.

BANKERS LIFE mark. Appellant's Br. at 3–4. The Board evaluated CDOC's likelihood of confusion claims according to the factors announced by our predecessor court in *In re E.I. DuPont DeNemours & Co.,* 476 F.2d 1357, 1361 (CCPA 1973) (*DuPont* factors), finding record evidence relevant to six of the thirteen factors. Specifically, the Board found that the similarity of the services and the similarity of the trade channels and customers favored a likelihood of confusion, as the services in the BANKERS LIFE registration and the services in Appellees' trademark applications are in part identical. *Board Opinion*, 2020 WL 582932, at *5. In addition, due to the mark's commercial strength, the Board concluded that BANKERS LIFE was "on the strong side of the spectrum," despite insurance-related third-party registrations and use of "BANKERS" and "BANKERS LIFE" establishing that the mark is suggestive, *id.* at *13. *See Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee en 1772,* 396 F.3d 1369, 1375 (Fed. Cir. 2005) (explaining that likelihood of confusion fame "varies along a spectrum from very strong to very weak"). The Board also found that the high degree of purchasing care exercised by consumers of the services, the absence of actual confusion, and the dissimilarity of the marks weighed against finding a likelihood of confusion. *Board Opinion*, 2020 WL 582932, at *16. After balancing the factors, the Board concluded that Appellees' marks were not likely to cause confusion with the BANKERS LIFE mark and dismissed the oppositions. *Id.* CDOC appealed to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(B).

## DISCUSSION

On appeal, CDOC challenges the Board's findings regarding the (1) dissimilarity of the marks, (2) conditions under which sales are made and buyers to whom such sales are made, and (3) length of time during which there has been concurrent use of the marks without evidence of actual confusion.

A mark may be refused registration on the principal register if it is "likely, when used on or in connection with the goods of the applicant, to cause confusion" with a registered mark. 15 U.S.C. § 1052(d). Likelihood of confusion is a question of law based on underlying findings of fact. *In re Chatam Int'l Inc.*, 380 F.3d 1340, 1342 (Fed. Cir. 2004). We assess a likelihood of confusion based on the *DuPont* factors. *DuPont*, 476 F.2d at 1361. Yet neither this court, nor the Board, is required to consider every *DuPont* factor. *Shen Mfg. Co. v. Ritz Hotel Ltd.*, 393 F.3d 1238, 1241 (Fed. Cir. 2004). Rather, only the factors that are relevant and of record need consideration. *See id.* Moreover, any one *DuPont* factor may be dispositive in a particular case, especially when that single factor is the dissimilarity of the marks. *Champagne Louis Roederer, S.A. v. Delicato Vineyards*, 148 F.3d 1373, 1375 (Fed. Cir. 1998).

We review the Board's factual findings on each relevant *DuPont* factor for substantial evidence and review any legal conclusions de novo. *Swagway, LLC v. Int'l Trade Comm'n*, 934 F.3d 1332, 1338 (Fed. Cir. 2019). Evidence is deemed substantial if a reasonable person could find that the evidence is adequate to support the agency's finding. *On–Line Careline, Inc. v. Am. Online, Inc.*, 229 F.3d 1080, 1085 (Fed. Cir. 2000).

A

The first *DuPont* factor considers the similarity or dissimilarity of the marks. In assessing this factor, the marks should be compared "in their entireties as to appearance, sound, connotation[,] and commercial impression." *DuPont*, 476 F.2d at 1361. Although this court and the Board evaluate marks in their entireties, when a mark comprises both words and a design, "'the verbal portion of the mark is the one most likely to indicate the origin of the goods to which it is affixed.'" *In re Viterra Inc.*, 671 F.3d 1358, 1362 (Fed. Cir. 2012) (quoting *CBS Inc. v. Morrow*, 708 F.2d 1579, 1581–82 (Fed. Cir. 1983)). In doing the

assessment, "for rational reasons, more or less weight [may be] given to a particular feature of the mark, provided the ultimate conclusion rests on consideration of the marks in their entireties." *In re Nat'l Data Corp.*, 753 F.2d 1056, 1058 (Fed. Cir. 1985).

Here, the Board properly compared Appellees' marks to CDOC's registered mark. First, the Board reasonably identified the dominant element of Appellees' marks, "Liberty Bankers Life," and afforded more weight to that dominant element. *In re Electrolyte Lab'ys, Inc.*, 929 F.2d 645, 647 (Fed. Cir. 1990) ("More dominant features will, of course, weigh heavier in the overall impression of a mark."). In its evaluation, the Board found "Liberty Bankers Life" to be the dominant element of the marks because: (1) a mark's literal portion is more likely to make an impression on customers; (2) "Liberty Bankers Life" is the leading part of the literal portion of Appellees' marks, *see In re Detroit Athletic Co.*, 903 F.3d 1297, 1303 (Fed. Cir. 2018) ("The identity of the marks' initial . . . words is particularly significant because consumers typically notice those words first."); and (3) "Liberty Bankers Life" has a position of prominence in both marks as it is placed over "Life Insurance" or "The Capitol Life." *Board Opinion*, 2020 WL 582932, at *13–14.

Second, viewing the Appellees' marks in their entireties, the Board noted that "the stylized design of the American flag reinforces or highlights the word 'Liberty' by engendering the commercial impression of freedom, thereby implying financial freedom or freedom from a financial problem," *id.* at *14. The Board then reasonably found that due to the additions of the word "Liberty" and the stylized American flag, Appellees' marks have different appearances, wording, and commercial impressions than CDOC's mark—distinguishing the marks even in view of the similarity of the services and trade channels. *Louis Roederer*, 148 F.3d at 1374–75 (finding that despite the fact the marks were used for the same class of goods and that

the goods traveled in the same trade channels and were purchased by the same or similar customers, the mark CRISTAL for champagne and the mark CRYSTAL CREEK for wine differed in appearance, sound, significance, and commercial impression). Thus, the Board's finding that the marks are dissimilar, *Board Opinion*, 2020 WL 582932, at *15, is supported by substantial evidence.

CDOC argues that the Board ignored its own determination of the overall strength of CDOC's BANKERS LIFE mark when assessing the similarity of the marks at issue. Appellant's Br. at 21. Specifically, CDOC asserts that despite finding its registered mark on the strong side of the spectrum based on marketplace strength and customer recognition, the Board improperly "focused solely on its characterization of [CDOC's] . . . mark as suggestive" when analyzing similarity. *Id.* at 24. We disagree. The Board in this part of the opinion was not opining on the strength of CDOC's mark but instead was analyzing *Liberty Bankers's* marks, specifically the "Bankers Life" portion of Liberty Bankers's overall marks. Given the multiple elements of Liberty Bankers's marks, it was not inappropriate for the Board to weigh the marks' different portions when assessing similarity, as the Board's ultimate conclusion rested on consideration of the marks in their entireties. *See Nat'l Data*, 753 F.2d at 1058.

CDOC also argues that the Board ignored substantial evidence of record regarding third-party use and registrations of the American flag and "Liberty" elements of Appellees' marks, contending that the use and registrations "refute[] any notion that these elements distinguish the . . . marks from the BANKERS LIFE mark in any legally-cognizable way." Appellant's Br. at 28. But under the circumstances of this case, the Board reasonably found that Appellees' marks, in their entireties, convey a comparatively different meaning related to freedom and liberty, and thus create a different commercial impression than CDOC's registered mark, *Board Opinion*, 2020 WL 582932,

at \*14–15.  *See* J. THOMAS MCCARTHY, 4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23:50 (5th ed. 2020) (MCCARTHY) (noting that "[i]f a junior user takes the entire mark of another and adds a generic, descriptive[,] or highly suggestive term, it is generally not sufficient to avoid confusion," but if "the marks in their entireties convey quite different meanings," a junior user may use the entirety of a senior user's mark without a likelihood of confusion).  We therefore discern no legal error in the Board's finding that the marks are dissimilar.

B

The fourth *DuPont* factor evaluates "[t]he conditions under which and buyers to whom sales are made, i.e. 'impulse' vs. careful, sophisticated purchasing."  *DuPont,* 476 F.2d at 1361.  In assessing this factor, the Board must consider all potential customers for the services recited in a trademark application, including ordinary consumers.  *Stone Lion Cap. Partners, L.P. v. Lion Cap. LLP*, 746 F.3d 1317, 1325 (Fed. Cir. 2014).  Customer care and sophistication tend to minimize the likelihood of confusion, *see Palm Bay*, 396 F.3d at 1376, and may elevate the reasonably prudent person standard to "discriminating purchaser," *see Weiss Assocs., Inc. v. HRL Assocs., Inc.*, 902 F.2d 1546, 1548 (Fed. Cir. 1990) (noting that in purchasing decisions involving expensive goods, the proper standard is "discriminating purchaser").  "The appropriate level of customer care and sophistication can be proven by:  (1) survey evidence; (2) expert testimony; or (3) inferences drawn by a judge based on the nature of the product or its price."  MCCARTHY § 23:95.

CDOC contends that the Board did not properly consider all potential customers of the insurance services offered by the parties or the nature of the services themselves. Appellant's Br. at 41.  CDOC asserts that potential customers "include a variety of levels of experience and knowledge of the parties' services," suggesting that

"this *DuPont* factor [must] be analyzed based on the perspective of the least sophisticated consumer." *Id.* at 45 (internal quotation marks omitted).  CDOC believes "[t]his is particularly so in the key target market of Medicare supplement insurance," *id.* at 44, because the only difference between the products is price, *id.* at 45.  Accordingly, CDOC argues that "[a]pplying any heightened level of care or consideration by consumers in purchasing insurance or annuities has no support in the record." *Id.* at 45.  We disagree.

Pointing to the record, the Board explained that potential customers typically learn about Appellees' services through an agent, as the companies do not generally use advertising. *Board Opinion*, 2020 WL 582932, at \*6.  Additionally, the Board found that agent sales presentations often occur in a customer's home or over the phone, are "tailored to the customer and the product," and take approximately one and a half hours, with multiple visits frequently required for product placement. *Id.*  To market its services, the Board observed that CDOC also employs sales agents and disseminates personalized advertisements to customers. *Id.*

Based on this evidence, the Board concluded that purchases of life and health insurance and annuities are "not daily purchases or purchases made on a regular basis," but are "unusual and complex" and made with "care and deliberation" after researching the products and "underwriters to some degree." *Id.* at \*7.  The Board then reasonably inferred that "[g]iven the nature of the services and the personalized nature of the parties' marketing efforts, relevant purchasers will exercise a relatively high degree of purchasing care when it comes to buying life and health insurance and annuities." *Id.*  In view of these findings, we agree that substantial evidence supports the Board's determination that the appropriate customer standard is the discriminating purchaser standard.    *See* MCCARTHY § 23:99

10          CDOC, INC. v. LIBERTY BANKERS LIFE INSURANCE

(referring to buying healthcare insurance as a "discriminating" purchase).

C

The eighth *DuPont* factor considers the length of time during and conditions under which there has been concurrent use of the marks without evidence of actual confusion. *DuPont,* 476 F.2d at 1361. To determine if the absence of actual confusion is indicative of the likelihood of confusion, the fact-finder looks to real market conditions to evaluate consumer exposure to the marks at issue, assessing the length of time of any concurrent use; the similarity of the services, customers, and trade channels; and the geographic overlap of the relevant markets. *In re Guild Mortg. Co.*, 912 F.3d 1376, 1381 (Fed. Cir. 2019) (evaluating the geographic overlap of the services, the similarity of the services and trade channels, and the relevant time periods when assessing the significance of the absence of actual confusion).

CDOC challenges the Board's conclusion that this factor weighs against finding a likelihood of confusion, asserting that the "record does not establish there was a reasonable opportunity for actual confusion to have occurred." Appellant's Br. at 33. CDOC contends that "the Board was mistaken in its finding that there was concurrent use in the relevant markets since 2007," *id.* at 35, arguing that "[p]rior to 2016, there had been very little competition or overlap between the insurance offerings" of CDOC and Appellees, *id.* at 36. According to CDOC, a likelihood of confusion arose only after Liberty Bankers entered the Medicare supplement insurance market in 2016. *Id.* Further, CDOC asserts that the Board "erred in considering the quality and scope of" Appellees' mark use, alleging minimal use of the marks at issue. *Id.* at 38. Additionally, CDOC argues that the Board's reliance on the number of visitors to Appellees' website "is misplaced," as consumers almost never learn about products via the

website and the marks at issue did not appear on the website after 2015. *Id.* at 40.

After reviewing the record, substantial evidence supports the Board's findings. Notably, the Board found that although Liberty Bankers did not start selling Medicare supplement insurance until 2016, *Board Opinion*, 2020 WL 582932, at *8, Appellees began using their marks in connection with the sale of life insurance and annuities in September 2007, *id.* CDOC also sold life insurance and annuities during this time period, *id.* at *9, targeting the same consumers as Appellees (i.e., Americans at or near retirement age, Americans planning for retirement, and retired Americans), *id.* Further, the Board found that together, CDOC and Appellees employ over 15,000 agents, selling services throughout the United States. *Id.* Even prior to Liberty Bankers's entry into the Medicare supplement insurance market in 2016, CDOC and Appellees had significant marketing and sales and were well known in the insurance and annuities industries. *Id.* at *8–9. Yet the Board observed that there was not one reported case by any agent of actual confusion. *Id.* at *9. The absence of actual confusion, despite offering similar products to the same customers in overlapping markets over a long period of time, *see Guild*, 912 F.3d at 1381, provides substantial evidence supporting the Board's finding that the eighth *DuPont* factor weighs against finding a likelihood of confusion.

## CONCLUSION

We have considered the remaining arguments but find them unpersuasive. For the foregoing reasons, we affirm the decision of the Board dismissing CDOC's oppositions.

### AFFIRMED