# United States Court of Appeals for the Federal Circuit

04-1063, -1076
(Opposition Nos. 71,706, 72,817, 73,756,
74,517, 72,818, and 75,003)

SHEN MANUFACTURING CO., INC.,

Appellant,

v.

THE RITZ HOTEL LIMITED,

Cross Appellant.

John F.A. Earley III, Harding, Earley, Follmer & Frailey, of Valley Forge, Pennsylvania, argued for appellant. With him on the brief were Frank J. Bonini, Jr., and Charles L. Riddle.

Bruce R. Ewing, Dorsey & Whitney LLP, of New York, New York, argued for cross appellant. With him on the brief was Lile H. Deinard.

Appealed from:    United States Patent and Trademark Office
                  Trademark Trial and Appeal Board

# United States Court of Appeals for the Federal Circuit

04-1063, -1076
(Opposition Nos. 71,706, 72,817, 73,756,
74,517, 72,818, and 75,003)

SHEN MANUFACTURING CO., INC.,

Appellant,

v.

THE RITZ HOTEL, LIMITED,

Cross Appellant.

_____

DECIDED:  December 17, 2004
_____

Before MAYER, Chief Judge, SCHALL and PROST, Circuit Judges.

MAYER, Chief Judge.

Shen Manufacturing Co., Inc. ("Shen") appeals the decision of the Trademark Trial and Appeal Board, which dismissed Shen's oppositions to The Ritz Hotel, Limited's ("RHL") registration of: (1) PUTTING ON THE RITZ for shower curtains; (2) RITZ PARIS RITZ HOTEL and design for various items of dinnerware; and (3) RITZ PARIS RITZ HOTEL and design for various floor and wall coverings. Shen Mfg. Co. v. Ritz Hotel Ltd., Opposition Nos. 71,706, 73,756 and 74,517, respectively (TTAB Aug. 7, 2003) ("Board's Opinion"). RHL cross-appeals the board's decision sustaining Shen's opposition to RHL's registration of RITZ for cooking and wine selection classes and

THE RITZ KIDS for ready-made and tailored clothing. <u>Board's Opinion</u>, Opposition Nos. 72,818 and 75,003, respectively. We affirm the board's dismissal of Opposition Nos. 71,706, 73,756 and 74,517; and reverse the board's decision sustaining Opposition Nos. 72,818 and 75,003.[1]

<u>Background</u>

RHL owns and operates The Ritz Hotel in Paris, France, which was opened in 1898 by César Ritz. According to RHL, as well as a myriad of publications presented by RHL, The Ritz Hotel is one of the most luxurious and renowned hotels in the world. Aside from hotel and restaurant services, RHL has expanded into other industries, including the sale of coffee, tea, chocolates, drinking glasses and champagne. These products are sold under a variety of registered marks, such as RITZ, RITZ PARIS RITZ HOTEL and design, and HOTEL RITZ. Shen, on the other hand, sells kitchen textiles, such as dish towels, potholders, and aprons, in addition to a variety of other textile items including bathroom towels and ironing board covers. Shen has used the RITZ mark, which was derived from its founder's last name, John Ritzenthaler, since it began doing business in 1892.

In 1984 and 1985, RHL applied to register the following marks: (1) PUTTING ON THE RITZ for shower curtains; (2) RITZ PARIS RITZ HOTEL and design for "dinner plates of porcelain or earthenware, cups, saucers and serving pieces of porcelain, hair combs, household sponges, household brushes, steelwool, [and] household glassware"; (3) RITZ PARIS RITZ HOTEL and design for "carpets, rugs, floor mats and matting,

---

[1] Shen also appealed the board's dismissal of Opposition No. 72,817. Because RHL has abandoned the corresponding application, Shen's appeal is moot.

linoleum for covering existing floors, [and] wall covering made of vinyl and plastic"; (4) RITZ for cooking and wine selection classes; and (5) THE RITZ KIDS for ready made and tailored clothing, including underwear, dresses, skirts, trousers, shirts, neckties, belts, gloves, hats, raincoats and galoshes. Shen opposed the registrations, arguing that RHL's use of "Ritz" would likely cause confusion based on three factors: (1) the strength of Shen's RITZ mark; (2) the similarity of RHL's marks to Shen's RITZ mark; and (3) the relatedness of the products covered by RHL's applications and those sold by Shen.

In 2003,[2] the board decided Shen's consolidated oppositions. The board dismissed Opposition No. 71,706, which challenged RHL's registration of PUTTING ON THE RITZ for shower curtains. In so doing, the board found that while shower curtains are closely related to Shen's products, namely bathroom towels, RHL's PUTTING ON THE RITZ mark is dissimilar to Shen's RITZ mark in terms of appearance, sound and commercial impression. The board likewise dismissed Opposition Nos. 73,756 and 74,517, which challenged both of RHL's registrations of RITZ PARIS RITZ HOTEL and design. Again the board found that the goods described in RHL's applications were related to Shen's goods, but that the differences in the marks were sufficient to prevent any likelihood of confusion. In contrast, the board sustained Opposition No. 72,818 covering RITZ for cooking and wine selection classes, finding that there was a likelihood of confusion because cooking classes require the use of kitchen textiles. The board also sustained Opposition No. 75,003 regarding THE RITZ KIDS for clothing, finding

---

[2] RHL's applications languished at the United States Patent and Trademark Office ("PTO") for nearly two decades as the result of the parties' failure to move the applications and corresponding oppositions forward.

that gloves are too related to barbeque mitts considering the similarity of the marks. Shen appealed the board's decision as to Opposition Nos. 71,706, 73,756 and 74,517; RHL cross-appealed the board's decision as to Opposition Nos. 72,818 and 75,003. We exercise jurisdiction pursuant to 28 U.S.C. § 1295(a)(4).  Packard Press, Inc. v. Hewlett-Packard Co., 227 F.3d 1352, 1356 (Fed. Cir. 2000).

Discussion

We review the board's legal conclusions de novo, In re Dixie Rest., Inc., 105 F.3d 1405, 1406 (Fed. Cir. 1997), and its findings of fact for substantial evidence, Hoover Co. v. Royal Appliance Mfg. Co., 238 F.3d 1357, 1359 (Fed. Cir. 2001).  Whether there is a likelihood of confusion is a question of law based on underlying facts, such as the similarity of the marks and the relatedness of the goods or services.  In re Dixie, 105 F.3d at 1406.

The PTO may refuse to register a trademark that is so similar to a registered mark "as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive . . . ."  15 U.S.C. § 1052(d) (Supp. 2004).  In re E.I. DuPont DeNemours & Co., 476 F.2d 1357, 1361 (CCPA 1973), established a test for determining whether there is a likelihood of confusion:

> In testing for likelihood of confusion . . . the following, when of record, must be considered:  (1) The similarity or dissimilarity of the marks in their entireties as to appearance, sound connotation and commercial impression.  (2) The similarity or dissimilarity and nature of the goods or services as described in an application or registration or in connection with which a prior mark is in use.  (3) The similarity or dissimilarity of established, likely-to-continue trade channels.  (4) The conditions under which and buyers to whom sales are made, i.e. 'impulse' vs. careful, sophisticated purchasing.   (5) The fame of the prior mark (sales, advertising, length of use). (6)  The number and nature of similar marks in use on similar goods.  (7) The nature and extent of any actual confusion. (8) The length of time during and conditions under which there has been

concurrent use without evidence of actual confusion. (9) The variety of goods on which a mark is or is not used (house mark, 'family' mark, product mark). (10) The market interface between applicant and the owner of a prior mark . . . . (11) The extent to which applicant has a right to exclude others from use of its mark on its goods. (12) The extent of potential confusion, i.e., whether <u>de minimis</u> or substantial. (13) Any other established fact probative of the effect of use.

Neither we nor the board, however, need consider every <u>DuPont</u> factor. <u>Han Beauty, Inc. v. Alberto-Culver Co.</u>, 236 F.3d 1333, 1336 (Fed. Cir. 2001) ("While it must consider each factor for which it has evidence, the [b]oard may focus its analysis on dispositive factors, such as similarity of the marks and relatedness of the goods."). Instead, we are required only to consider those factors that are relevant. There are three such factors in this case: (1) the alleged fame of Shen's RITZ mark; (2) the similarity of the marks; and (3) the relatedness of the goods.[3] <u>See</u> <u>Bose Corp. v. QSC Audio Prods., Inc.</u>, 293 F.3d 1367, 1370 (Fed. Cir. 2002).

Before undertaking a comparison of each set of marks, we address Shen's contention that its RITZ mark is famous and, therefore, entitled to enhanced protection. <u>See</u> <u>id.</u> at 1371 (noting that famous marks enjoy greater protection). In support of this argument, Shen offered evidence that: (1) its mark is arbitrary; (2) more than $5 million worth of products bearing Shen's RITZ mark are sold annually; (3) the RITZ mark has been used continuously since 1892; (4) Shen spends hundreds of thousands of dollars annually on advertising; and (5) products bearing Shen's RITZ mark are advertised nationally. <u>See</u> <u>id.</u> ("[F]ame of a mark may be measured indirectly . . . by the volume of

---

[3] We assume that the channels of trade and the sophistication of the purchasers are identical. <u>See</u> <u>Hewlett-Packard Co. v. Packard Press, Inc.</u>, 281 F.3d 1261, 1268 (Fed. Cir. 2002) ("[A]bsent restrictions in the application and registration, goods and services are presumed to travel in the same channels of trade to the same class of purchasers.").

sales and advertising expenditures of the goods traveling under the mark, and by the length of time those indicia of commercial awareness have been evident."). This evidence does not, however, justify a finding of fame. In Giant Food, Inc. v. Nation's Foodservice, Inc., 710 F.2d 1565, 1569-70 (Fed. Cir. 1983), we found that the GIANT FOOD mark was famous based on its 45 years of use, sales in excess of $1 billion per year, extensive media exposure and prominent display on the façade of supermarkets. Likewise, we found in Bose, 293 F.3d at 1372, that the ACOUSTIC WAVE mark was famous based on 17 years of use, annual sales over $50 million, annual advertising in excess of $5 million, and extensive media coverage. Although Shen's RITZ mark has been in use for more than a century, it does not compare in terms of sales, advertising or media interest. Further, it cannot be said that Shen's mark enjoys the "extensive public recognition and renown" characteristic of a famous mark. Id. at 1371 (quotation marks omitted). Thus, the board's failure to find that Shen's RITZ mark is famous is supported by substantial evidence.

We now consider each set of marks in turn, beginning with Opposition No. 71,706, which the board dismissed. The two marks at issue are Shen's RITZ for bathroom towels and RHL's PUTTING ON THE RITZ for shower curtains.[4] The board found, and we agree, that bathroom towels and shower curtains are related goods. Board's Opinion, slip op. at 10. Because the goods are related, "the degree of similarity necessary to support a conclusion of likely confusion declines." Century 21 Real Estate Corp. v. Century Life of Am., 970 F.2d 874, 877 (Fed. Cir. 1992). As to the marks, the

---

[4] Although Shen asserts that it now uses its RITZ mark on shower curtains, it did not start this practice until after RHL's application. As such, it is not entitled to priority of use for RITZ on shower curtains. See Person's Co. v. Christman, 900 F.2d 1565, 1596 (Fed. Cir. 1990).

board found that PUTTING ON THE RITZ leaves the consumer with a distinct impression, specifically that of getting dressed up or of the song composed by Irving Berlin. Board's Opinion, slip op. at 10. Shen argues that this was error because it overemphasizes the relevance of the words "Putting on the" while simultaneously underemphasizing the use of "Ritz." In this vein, Shen contends that "Putting on the" has no significance aside from its use in conjunction with "Ritz." As such, "Ritz" is the only relevant portion of the mark and, therefore, RHL's mark is identical to Shen's mark.

While there are often discrete terms in marks that are more dominant and, thus, more significant to the assessment of similarity, Giant Food, 710 F.2d at 1570 (finding GIANT to be dominant in both marks), the law forbids the type of dissection proposed by Shen. See Packard Press, 227 F.3d at 1358 ("The ultimate conclusion of similarity or dissimilarity of the marks must rest on consideration of the marks in their entirety."); see also In re Nat'l Data Corp., 753 F.2d 1056, 1059 (Fed. Cir. 1985). PUTTING ON THE RITZ, when evaluated as a whole, conveys a strong commercial impression. It conjures images of fancy, even swanky, ladies in full length gowns and gentlemen in tails and top hats congregating in a large Art Nouveau restaurant where an orchestra is about to start. This image, one of comfort, sophistication and wealth, resonates strongly with the buying public, leaving them with an impression unlike that from Shen's RITZ mark, which, when used on kitchen textiles, invokes images, if any, of cleaning, cooking or manual labor generally. The two marks also differ in terms of sound and appearance. See In re Coors Brewing Co., 343 F.3d 1340, 1343 (Fed. Cir. 2003). RHL's mark contains other words in addition to "Ritz," making both its visual appearance and pronunciation longer. Thus, we affirm the board's dismissal of

Opposition No. 71,706 because the dissimilarity of the marks prevents a likelihood of confusion.

We now turn to Opposition Nos. 73,756 and 74,517, which the board also dismissed. Both of these oppositions challenged the registration of RITZ PARIS RITZ HOTEL and design, which is reproduced here.



The products covered in the first opposition include dinnerware, such as plates, cups, saucers and drinking glasses, in addition to cleaning items, such as steelwool and sponges. The second includes various types of floor coverings, such as carpets and rugs, as well as wall coverings. The board found that despite the relatedness of some of the products listed in the applications (e.g., sponges) to Shen's cleaning towels, the marks are sufficiently different to avoid a finding of likely confusion. Board's Opinion, slip op. at 9. Shen argues that the board erred by giving too much weight to the disclaimed elements of RHL's mark, namely the term "Paris" in large font and the terms "Paris" and "hotel" that appear on the banner under the crest. The disclaimed elements of a mark, however, are relevant to the assessment of similarity. In re Shell Oil Co., 992 F.2d 1204, 1206 (Fed. Cir. 1993). This is so because confusion is evaluated from the perspective of the purchasing public, which is not aware that certain words or phrases

have been disclaimed.  In re Nat'l, 753 F.2d at 1059.  Therefore, the board did not err by taking into account the reference in RHL's mark to a hotel in Paris, France.

RHL's mark is further differentiated by the crest and ribbon, which give the mark a particularly regal feel.  The crest, ribbon and reference to Paris collectively give the commercial impression of royalty, old-world tradition and continental elegance, which differs from the more mundane impression imparted by Shen's RITZ mark.  Aside from the distinct commercial impression left by RHL's mark, the appearance of the mark is also different from Shen's RITZ mark.  See Hewlett-Packard, 281 F.3d at 1265.  Shen's mark generally appears as simple block lettering or block lettering centered in a diamond, as reproduced here.



Thus, Shen's uncomplicated mark either has a different shape, a diamond as opposed to the half circle used by RHL, or no embellishment at all.  Based on the differences between the RITZ PARIS RITZ HOTEL and design and RITZ marks, we affirm the dismissal of Opposition Nos. 73,756 and 74,517.

Next, we assess that portion of the board's decision sustaining Opposition No. 72,818, which relates to RHL's registration of RITZ for cooking and wine selection classes.  The marks are identical; therefore, we focus our attention on the relatedness of the goods.  The board found that RHL's cooking classes are related to Shen's kitchen textiles because "in providing cooking courses . . . it would be necessary that one make

use of kitchen towels, dish cloths, aprons, barbecue mitts and potholders." Board's Opinion, slip op. at 6. Thus, the board based its finding of relatedness on the fact that "the services of applicant clearly require the use of certain of opposer's goods." Id.

That two goods are used together, however, does not, in itself, justify a finding of relatedness. "[T]he test is not that goods and services must be related if used together, but merely that that finding is part of the underlying factual inquiry as to whether the goods and services at issue . . . can be related in the mind of the consuming public as to the origin of the goods." Packard Press, 227 F.3d at 1358. Conversely, goods that are neither used together nor related to one another in kind may still "be related in the mind of the consuming public as to the origin of the goods. It is this sense of relatedness that matters in the likelihood of confusion analysis." Recot, Inc. v. Becton, 214 F.3d 1322, 1329 (Fed. Cir. 2000) (comparing FRITO-LAY for snack foods to FIDO LAY for dog treats). Therefore, although a student of RHL's cooking classes would undoubtedly use kitchen textiles, it does not necessarily follow that the consuming public would understand those products to have originated from the same source. For example, in In re Coors, 343 F.3d at 1341, we held that the board erred by finding that beer and restaurant services are related regardless of the fact that countless restaurants serve beer. On the other hand, we found that "distributorship services in the field of automotive parts" were related to service station oil and lubrication services. In re Shell, 992 F.2d at 1206 (comparing the use of RIGHT-A-WAY on both products). Likewise, we found that amplifiers (i.e., parts of sound systems) were related to complete sound systems. Bose, 293 F.3d at 1376 (comparing the use of ACOUSTIC WAVE with POWER WAVE). And, finally, we found that data processing services

would be perceived by the purchasing public as related to computer hardware and consultant data processing services.  Packard Press, 227 F.3d at 1358 (comparing HEWLETT-PACKARD with PACKARD TECHNOLOGIES).

Of these, the relationship between cooking classes and kitchen textiles is more akin to the relationship between restaurant services and beer.  Cooking classes are not the same type of product as kitchen textiles:  one is a service while the other is a tangible good.  Nor are they the same category of product in the sense that snack foods and dog treats are.  See Recot, 214 F.3d at 1329.  In this sense, it would be more accurate to say that cooking classes are in the same category as language or pottery classes.  Thus, aside from the fact that these goods are used together, there is no indication that the consuming public would perceive them as originating from the same source.  As a result, the board's finding of relatedness is not supported by substantial evidence.  Having determined that cooking classes and kitchen textiles are not related, we likewise reverse the ultimate conclusion as to the likelihood of confusion.  Although the marks are identical, the differences in the products as well as the weakness of Shen's mark lead us to dismiss Opposition No. 72,818.

Finally, we turn to Opposition No. 75,003 for THE RITZ KIDS, which was sustained by the board.  The board found that THE RITZ KIDS was similar to RITZ because "the word THE is one of those words that has virtually no significance in distinguishing trademarks" and "the word KIDS . . . simply indicates that the particular item of apparel is designed for kids."  Board's Decision, slip op. at 8.  The board likewise found that gloves are "legally identical" to barbeque mitts based on the definition in Random House Webster's Dictionary (2001) of "mitt" as a type of glove.  Board's

_Decision_, slip op. at 7. In conclusion, the board commented that, "if a consumer were familiar with opposer's RITZ mitts, we believe that upon encountering applicant's mark THE RITZ KIDS for, among other goods, gloves, he or she would assume that they emanate from a common source." _Id._ at 8.

We cannot sanction the board's dissection of RHL's mark. _See_ _In re Nat'l_, 753 F.2d at 1058 (holding that a "likelihood of confusion cannot be predicated on dissection of a mark"). While it is accurate that terms such as "the" and "kids" often have little impact on consumers, this is not universally true. In this case, for instance, "the" has elevated significance because of the well-known manner in which people refer to RHL as "_The_ Ritz" or "_The_ Ritz Hotel," but not as "Ritz" or "Ritz Hotel." _See id._ at 1058-59 ("Without question, the descriptive or generic character of an expression . . . is pertinent to the issue of likelihood of confusion."). Therefore, "the" operates as an indicator of source in RHL's mark even though it has diminished importance in most other marks. And, while "kids" is undeniably used to indicate that the product is geared toward children, it distinguishes RHL's mark from Shen's; it is unlikely that consumers would mistakenly believe that Shen, the manufacturer of kitchen textiles, has expanded into children's clothing. In addition, the pronunciation of THE RITZ KIDS sounds like "The Rich Kids," leaving the impression of wealth, a concept tied strongly to RHL and not associated in any way with Shen's RITZ mark. Thus, taking into consideration the "appearance, sound, connotation, and commercial impression of the two marks," we reverse the board's finding that THE RITZ KIDS is similar to RITZ. _In re Coors_, 343 F.3d at 1343.

We also reverse the board's finding that gloves are related to barbeque mitts because it is not supported by substantial evidence. The mere fact that "mitt" is defined as a type of glove has no relevance to whether a consumer would believe that the two products emanate from the same source. See Packard Press, 227 F.3d at 1358. First, Shen's product is not a mitt, it is a barbeque mitt. It is designed to protect the hand from heat while cooking. While it covers the hand like a glove, it is better understood as a tool than as an article of clothing. The unrelatedness of RHL's and Shen's products is highlighted by comparing a similar set of goods: hard hats used by construction workers and fedoras. While both are hats that are used to cover the head, they have different purposes. The first is used for protection, just as a barbeque mitt is, while the second functions to keep the head warm in addition to adding an air of style, just as ready made or tailored gloves do. The mere fact that both barbeque mitts and gloves are worn on the hands simply does not support a finding that consumers would associate these products with a common source. See Recot, 214 F.3d at 1329. The board's finding that RHL's and Shen's goods are related is reversed. Because THE RITZ KIDS is not similar to RITZ and gloves are not related to barbeque mitts, we likewise reverse the board's decision sustaining Opposition No. 75,003.

## Conclusion

Accordingly, we affirm the decision dismissing Opposition Nos. 71,706, 73,756 and 74,517; and reverse the decision sustaining Opposition Nos. 72,818 and 75,003.

## Costs

No costs.

## AFFIRM-IN-PART AND REVERSE-IN-PART