NOTE:  Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

05-1520
(Opposition No. 91/112,586)


MIGUEL TORRES, S.A.,

Appellant,

v.

BODEGAS MUGA, S.A.,

Appellee.

_____

DECIDED:  April 10, 2006

_____


Before LOURIE, Circuit Judge, CLEVENGER, Senior Circuit Judge, and BRYSON, Circuit Judge.

PER CURIAM.

Miguel Torres, S.A., appeals from a decision of the Trademark Trial and Appeal Board dismissing its opposition to the application of Bodegas Muga, S.A., to register a mark on the principal trademark register, based on the Board's conclusion that the mark Muga sought to register was not sufficiently similar to Torres' marks as to cause a likelihood of confusion regarding the origin of Muga's goods bearing the mark on the application.  We affirm.

Muga is a Spanish winery that has been in existence since 1932 and has been selling wines in the United States under the TORRE MUGA mark since 1997. Muga owns Registration No. 1,933,103, issued in 1995, for the house mark MUGA for wines. Muga sells several wines under that mark.

Torres is a Spanish winery that has been in existence since 1870 and has been selling wines in the United States under the TORRES mark since 1964. It owns Registration No. 897,049, issued in 1970, for the mark TORRES for wines and brandy, as well as several other registrations, including MIGUEL TORRES and LAS TORRES for wines, and the mark below (No. 1,413,565, issued in 1986) for brandy and wine.

# TORRES

On March 27, 1998, Muga filed an application (serial no. 75,458,417) with the U.S. Patent and Trademark Office ("PTO") to register the mark TORRE MUGA and the design shown below for "wines" on the principal register.



On December 8, 1998, Torres filed an opposition to Muga's registration, alleging that the mark Muga sought to register was sufficiently similar to Torres' marks as to create a

likelihood of confusion as to the origin of Muga's goods when applied to them. The Board considered the evidence submitted by Muga and Torres and concluded that there was no likelihood of confusion. On that basis, the Board dismissed Torres' opposition, and Torres now appeals.

II

The PTO may not register a mark where a likelihood of confusion exists as to the origin of goods traveling under that mark. 15 U.S.C. § 1052(d); see Bose Corp. v. QSC Audio Prods., 293 F.3d 1367, 1369-70 (Fed. Cir. 2002). Deciding whether a likelihood of confusion has been shown in a particular case requires us to consider the 13 factors set out in In re E.I. DuPont DeNemours & Co., 476 F.2d 1357, 1361 (CCPA 1973), although not all the factors may be relevant in any particular case. In this case, the Board examined the evidence submitted by Muga and Torres, and it found that only the first eight DuPont factors were relevant. The Board concluded that the second, third, and fourth factors—the similarity of the goods, the similarity of established trade channels, and the conditions of sale and sophistication of buyers, respectively—favored Torres. The Board based that conclusion on its findings that the goods of both parties were identical as described in the registration applications ("wine"), the trade channels were similar, and the purchasers of the goods of both producers were relatively unsophisticated. Neither party disputes those findings on appeal.

The Board found that the first, fifth, sixth, seventh, and eighth DuPont factors— the similarity of the marks, the fame of the prior mark, third-party use of similar marks on similar goods, evidence of actual confusion, and the extent of concurrent use without evidence of actual confusion—all favored Muga. After balancing the competing factors,

the Board ruled in favor of Muga on the ultimate question of likelihood of confusion. We review the Board's findings with regard to each factor for substantial evidence, while reviewing the ultimate question of likelihood of confusion de novo. See In re Coors Brewing Co., 343 F.3d 1340, 1343 (Fed. Cir. 2003); Bose, 293 F.3d at 1370.

A

Turning to the first DuPont factor, "similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression," the Board compared Muga's TORRE MUGA mark and design with four of Torres' registrations: the TORRES mark with a tower design, described above, and the typed marks TORRES, MIGUEL TORRES, and LAS TORRES. The Board considered the similarity in wording of the marks and compared the tower design in Muga's application to the three-tower design on Torres' registration. It noted that "torres" is the Spanish word for "towers," that it is a common surname in the United States, and that it is the surname of the family that runs the Torres winery. The Board noted that the latter connotation is reinforced by the name of the company, "Miguel Torres, S.A." The Board also observed that Muga is the family name of Muga's officials and founders, and that Muga's application stated that the words TORRE MUGA mean "tower landmark." Viewing the marks as a whole, the Board found that prospective purchasers would be likely to understand Torres' marks as referring to either the surname "Torres" or the plural of towers, while they would understand Muga's mark as referring to either the surname "Muga" or "Muga tower." It concluded that the marks differed in appearance, sound, connotation, and commercial impression, but not so much so that the first DuPont factor

was dispositive of the question of likelihood of confusion. Cf. Coors, 343 F.3d at 1344 ("[S]imilarity is not a binary factor but is a matter of degree.").

On appeal, Torres argues that the Board's findings on this factor were unsupported by substantial evidence. Specifically, Torres argues that the Board gave undue weight to the differences between the marks (especially the difference between "Torres" and "Torre") and should have understood that prospective purchasers will likely remember only the "focal point" of the marks, which in this case is the "Torre" or "tower" element common to the marks of both Torres and Muga. We disagree. First, we note that Torres provides no evidence as to which aspects of the marks consumers are most likely to remember. See Hoover Co. v. Royal Appliance Mfg. Co., 238 F.3d 1357, 1359 (Fed. Cir. 2001) (burden of proof is on the opposer). More importantly, however, the evidence of record supported the Board's conclusion. While "torres" is the plural of the Spanish word for "tower," it is also the surname of the family that runs the Torres winery. The evidence regarding the fame of Torres' proprietor "Miguel Torres," the fact that the name of the company is "Miguel Torres, S.A.," and the use of the mark MIGUEL TORRES further support the Board's finding that Torres' marks all connote the surname in addition to the word "towers." Moreover, the evidence reflected that "Torres" is a very common surname in the United States, while the same is not true of "Torre." Thus the subtraction of the "s" does not merely change plural to singular in this case, but also removes much of the connotation of the word as a surname. When used in the singular, "torre" does not connote the surname Torres or the Torres winery, but simply the word "tower." This distinction, along with the fact that Muga does not use the word "torre" alone, but uses it in conjunction with "Muga," is sufficient to support the Board's

finding that the marks were somewhat dissimilar in their appearance, sound, connotation and commercial impression.[1]

B

Torres challenges the Board's finding that the fifth DuPont factor, the fame of the prior mark, only slightly favored Torres. In assessing the fame of a mark, the relevant inquiry is the extent to which customers and potential customers of a product (as opposed to the general public) are aware of the prior mark. See Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772, 396 F.3d 1369, 1375 (Fed. Cir. 2005). The DuPont opinion characterizes that factor as "the fame of the prior mark (sales, advertising, length of use)." 476 F.2d at 1361. As that phrasing suggests, the fame of a mark is usually proved by evidence reflecting the volume of sales, the extent of advertising of goods bearing the mark, and the length of time that those indicia of consumer awareness have been present, see Shen Mfg. Co., Inc. v. Ritz Hotel, Ltd., 393 F.3d 1238, 1241-42 (Fed. Cir. 2004), although evidence of critical acclaim may also be probative of the level of consumer awareness of a mark, see Bose, 293 F.3d at 1374.

In arguing to the Board that its marks were famous, Torres relied heavily on awards that it received from wine industry publications and newspaper articles praising the Torres winery and its proprietor. Muga's cross-examination of one of Torres'

---

[1]    Torres makes several other arguments that do not merit lengthy discussion. For example, Torres argues that the Board's similarity analysis was flawed because it did not take into account the principle that a relatively low degree of similarity between marks is required to show likelihood of confusion when the goods attached to each mark are identical. The Board addressed that point in its discussion of the third DuPont factor, which it found to favor Torres, and it properly weighed that factor against the factors that favored Muga.

witnesses elicited some information about annual sales, but the Board did not consider that evidence probative because Torres did not provide context (market share, for example) for assessing the magnitude of that figure. The Board considered Torres' evidence of awards and newspaper references, and found that that evidence did not weigh heavily in Torres' favor based on the Board's observation that awards such as those on which Torres relied seemed to be common. On appeal, Torres summarizes its evidence of awards and newspaper references and argues that the Board did not give that evidence appropriate weight. We disagree. Although critical acclaim and favorable references in newspapers may be probative of the level of consumer awareness of a mark, Bose, 293 F.3d at 1374, the Board properly found that Torres' evidence fell far short of the showing usually required to prove that a mark has acquired fame and the broad protection that accompanies it. See, e.g., Shen, 393 F.3d at 1240-41 (summarizing cases). The Board accurately described the quality of the evidence before it: the evidence showed that Torres' marks had "acquired some recognition," but it did not support Torres' assertion that its marks were "unquestionably famous."

C

Torres challenges the Board's finding that the sixth DuPont factor, "[t]he number and nature of similar marks in use on similar goods," favored Muga. Evidence of use by third parties of similar marks on similar goods is probative of the ultimate inquiry of likelihood of confusion only when such use is so extensive that "customers have become so conditioned by a plethora of such similar marks that customers have been educated to distinguish between different [such] marks on the basis of minute

distinctions." Palm Bay Imports, 396 F.3d at 1374 (internal quotation marks omitted, bracketed text in original).

The Board first noted that "torre" means "tower" in Italian and Portuguese, as well as in Spanish. It then considered Muga's evidence showing that several wines bearing names that include the word "torre" were in commercial use, for example "Torre Oria," "Torre Spina," "Torre de Barreda," and "Allegrini Palazo Della Torre." Muga's evidence of the commercial use of the word "torre" in the names of wines not originating from the Torres winery consisted of: (1) menus from several restaurants in the United States listing such wines; (2) evidence showing that various retail locations in the United States and several online stores offered such wines; (3) an acknowledgment by one of Torres' witnesses that he was aware of some of the other wines containing the word "torre"; (4) the Wine Spectator's Ultimate Guide to Buying Wines, listing several such wines; and (5) four trademark registrations (Nos. 2,177,753; 2,655,606; 2,171,328; and 2,407,900) for marks incorporating the word "torre" for wines. The Board found that this evidence was "quantitatively and qualitatively different from what it normally encountered in likelihood of confusion cases" and found that this factor favored Muga.

On appeal, Torres argues that the evidence on which the Board relied is not probative. For example, Torres argues that Muga did not provide evidence showing the size of the customer bases of the restaurants or retail stores. Torres also notes that registrations, standing alone, are not evidence that the marks are in use or that purchasers are aware of them. See Palm Bay Imports, 396 F.3d at 1373-74. While Muga provided minimal context for some of its examples, the sheer number and

geographical distribution of Muga's examples of third-party use give the evidence some probative value, contrary to Torres' contentions.

D

The seventh and eighth DuPont factors are "[t]he nature and extent of any actual confusion," and "[t]he length of time during and conditions under which there has been concurrent use without evidence of actual confusion." DuPont, 476 F.2d at 1361. The Board discussed those factors together. It noted that Muga had sold TORRE MUGA wines in the United States since 1997, and that Muga's and Torres' wines were sold in the same types of wine stores and restaurants, were reviewed in some of the same publications, and in some cases appeared on the menus of the same restaurants. Under these circumstances, the Board found that it was highly probative that Torres had not produced any evidence at all of actual confusion. On appeal, Torres argues that the Board should not have given this factor much weight in light of the fact that the volume of sales of TORRE MUGA wine in the United States was less than 25,000 bottles per year between 1997 and 2000. Further, Torres argues that the number of layers in the distribution chain between the winery in Spain and American customers at stores and restaurants makes it highly unlikely that any instances of actual confusion would be communicated to Torres. While these are plausible explanations for the lack of evidence of actual confusion, they do not persuade us that the Board's finding on that factor was not supported by substantial evidence. Torres does not dispute that it produced no evidence of actual confusion, and the Board reasonably inferred that the lack of such evidence, under the circumstances, favored Muga.

E

Turning finally to the ultimate question whether Torres showed that Muga's mark was likely to cause confusion, we sustain the Board's conclusion. The factors favoring Muga are sufficient, when balanced against the factors favoring Torres, to support the conclusion that Muga's mark is unlikely to cause confusion as to the source of the goods to which it is affixed. We therefore affirm the decision of the Board.