NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**IN RE: LAUREL DESIGNS, LLC,**
*Appellant*

_____

2024-1203

_____

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 90482744.

_____

Decided: January 13, 2026

_____

SETH MARTIN NEHRBASS, Garvey, Smith & Nehrbass, Patent Attorneys, LLC, New Orleans, LA, for appellant. Also represented by JULIE RABALAIS CHAUVIN, VANESSA M. D'SOUZA.

MARY L. KELLY, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for appellee Coke Morgan Stewart. Also represented by AMY J. NELSON.

_____

Before MOORE, *Chief Judge*, STOLL, *Circuit Judge*, and BUMB, *Chief District Judge*.[1]

PER CURIAM.

Laurel Designs, LLC appeals the decision of the Trademark Trial and Appeal Board affirming the refusal to register Laurel Designs' SAZERAC STITCHES mark. Laurel Designs challenges the Board's determination that its mark is likely to be confused with registered mark SAZERAC. For the following reasons, we affirm.

## BACKGROUND

Laurel Designs sought registration of its mark SAZERAC STITCHES for services identified as:

> Retail store services and online retail store services featuring lighting, and light fixtures, namely, sconces, chandeliers, flush mount ceiling fixtures, pendants, and table lamps; Retail store services and online retail store services featuring lighting accessories, namely, light bulbs, switches and cords, replacement glass, downrods, hang straights, and backplates; Retail store services and online retail store services featuring hardware, namely, knobs; Retail store services and online retail store services featuring home decor, namely, candle holders, tree skirts, planters, vases, rainbow decor items, serving trays; Retail store services and online retail store services featuring night lights, ornaments, bookends, tree skirts, and serving trays in the shape of a bear; Retail store services and online retail store services featuring furniture, namely, chairs, sofas, rockers, and ottomans;

---

[1] Honorable Renée Marie Bumb, Chief Judge, United States District Court for the District of New Jersey, sitting by designation.

> Retail store services and online retail store services featuring textiles, all in International Class 35.

J.A. 1–2 (internal quotations omitted). The Examining Attorney refused to register the mark, on the ground that the mark SAZERAC STITCHES, used in connection with the services above, was likely to be confused with the mark SAZERAC[2] registered for, among other things, "'Online retail store services featuring distilled spirits, beverage glassware, cocktail accessories, T-shirts, caps, postcards, and cocktail recipe books,' in International Class 35."[3] J.A. 2.

Laurel Designs appealed the final refusal by the Examining Attorney to the Board. The Board affirmed the refusal after conducting "an analysis of all of the probative evidence of record bearing on a likelihood of confusion." J.A. 3 (citing *In re E.I. DuPont DeNemours & Co.*, 476 F.2d 1357 (CCPA 1973) ("*DuPont*")). The Board deemed three of the thirteen *DuPont* factors relevant to its analysis: "[t]he similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation[,] and commercial impression" (factor 1); "[t]he similarity or dissimilarity and nature of the goods or services as described in an application or registration or in connection with which a prior mark is in use" (factor 2); and "[t]he similarity or dissimilarity of established, likely-to-continue trade channels" (factor 3). *DuPont*, 476 F.2d at 1361 (providing full

---

[2]    Reg. No. 4,368,934, issued on July 16, 2013 (the "Cited Registration"), registered in the name of Sazerac Brands LLC, the "cited registrant." J.A. 2.

[3]    While the Examining Attorney provided other marks likely to be confused with SAZERAC STITCHES, only the mark SAZERAC is relevant on appeal because the Board found "this mark and the recited services most similar to [Laurel Designs'] mark and services." J.A. 4.

list of factors); *see also* J.A. 4, 11 (identifying relevant factors).

The Board began its analysis with a combined discussion of *DuPont* factors 2 and 3, finding they weighed in favor of confusion, since the evidence presented was "sufficient to establish relatedness . . . in that a number of home-goods-focused stores offer online retail store services featuring the types of goods in the involved application and Cited Registration," and the evidence "show[ed] that online retailers feature the products offered by both [Laurel Designs] and the cited registrant . . . all under a single mark to the same classes of consumers." J.A. 8. The Board next considered *DuPont* factor 1, finding that the marks, when "considered in their entireties," are "similar in appearance, sound, connotation, and commercial impression due to the shared term SAZERAC." J.A. 19. Then, having found that the relevant three factors favored confusion, the Board concluded that Laurel Designs' mark "SAZERAC STITCHES [was] likely to cause confusion with the mark SAZERAC." *Id.*

Laurel Designs appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(4).

## DISCUSSION

On appeal, Laurel Designs argues that the Board erred in determining there was a likelihood of confusion. "We review the [B]oard's legal conclusions *de novo*, and its findings of fact for substantial evidence." *Dollar Fin. Grp., Inc. v. Brittex Fin., Inc.*, 132 F.4th 1363, 1368 (Fed. Cir. 2025) (alteration in original) (citation omitted). "Likelihood of confusion is a question of law, based on findings of relevant underlying facts, namely findings under the *DuPont* factors . . . ." *Id.* at 1369 (citation omitted). "We review the Board's weighing of the *DuPont* factors de novo, but we review the Board's factual findings on each *DuPont* factor for substantial evidence." *In re Charger Ventures LLC*, 64 F.4th 1375, 1381 (Fed. Cir. 2023) (internal citations

omitted).  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Dollar Fin. Grp.*, 132 F.4th at 1368–69 (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)).

"In any given case, different *DuPont* factors may play a dominant role and some factors may not be relevant to the analysis."  *Charger Ventures*, 64 F.4th at 1381 (citing *Bose Corp. v. QSC Audio Prods., Inc.*, 293 F.3d 1367, 1370 (Fed. Cir. 2002)).  "The Board is required to consider each factor for which it has evidence, but it can focus its analysis on dispositive factors."  *Id.* (citing *In re Dixie Rests., Inc.*, 105 F.3d 1405, 1406–07 (Fed. Cir. 1997)).  The Board deemed the first, second, and third *DuPont* factors relevant to its analysis.  We proceed in the same order as the Board:  first by reviewing the Board's findings with respect to factors 2 and 3, then by reviewing those with respect to factor 1.

I

We begin by addressing whether substantial evidence supports the Board's findings with respect to *DuPont* factors 2 and 3: "the similarity of the services, channels of trade, and classes of customers."  J.A. 4 (citing *DuPont*, 476 F.2d at 1361).  Laurel Designs argues that the evidence presented for factor 2 is insufficient to establish that "the goods / services are related in some manner and/or the circumstances that surround their marketing are such that consumers could have the mistaken belief that the goods / services emanate from the same source."  Appellant's Br. 23–24.  As for factor 3, Laurel Designs argues that "the Board failed to properly weigh the evidence before it regarding the actual trade channels of the cited services . . . , as well as the class of customers and the items listed under each respective set of services."  Appellant's Br. 25.  We conclude that the Board's factual findings on

*DuPont* factors 2 and 3 are supported by substantial evidence.

In evaluating these factors, the Board first recognized that the services in the application versus "the Cited Registration do not have to be identical or directly competitive to support a finding of a likelihood of confusion." J.A. 5 (citing *Online Careline, Inc. v. Am. Online, Inc.*, 229 F.3d 1080, 1086 (Fed. Cir. 2000)). Rather:

> It is sufficient if the respective services are related in some manner and/or that the conditions surrounding their marketing are such that they could be encountered by the same persons under circumstances that could, because of the similarity of the marks . . . used in connection therewith, give rise to the mistaken belief that they emanate from or are associated with a single source.

*Id.* (citing *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1369 (Fed. Cir. 2012)).

Substantial evidence supports the Board's finding on *DuPont* factor 2. The Board identified evidence showing that "at least ten third-party providers of online retail store services featuring sconces, chandeliers, flush mount ceiling fixtures, pendants, table lamps, knobs, candle holders, vases, serving trays, bookends, ornaments, chairs, sofas, or textiles"—i.e., goods identified in Laurel Designs' application—"also offer online retail store services featuring beverage glassware or cocktail accessories, such as coasters"—i.e., goods identified in the Cited Registration—"all under the same mark." J.A. 6. The Board then listed, along with the respective goods offered, the identified third-party online retailers: Zara Home, Pottery Barn, Ballard Designs, At Home, Bed Bath & Beyond, Crate & Barrel, Ikea, Inspire Me!, Kirkland's, and West Elm. J.A. 6–8. And the Board specifically found that, while some of the identified retailers "offer a wide range of home furnishings," the range of offered goods was not so wide as to render those

retailers "department stores," further supporting its reliance on those specific retailers, since "large department stores sell a wide variety of goods and services and, therefore, . . . have little probative value in showing that goods are related." J.A. 6 n.8.

Substantial evidence also supports the Board's finding on *DuPont* factor 3. The Board found that the evidence of the identified retail websites "shows that online retailers feature the products offered by both [Laurel Designs] and the cited registrant." J.A. 8. "Thus, consumers are used to seeing the types of goods featured by [Laurel Designs] and the cited registrant offered under a single mark via online retail store services," and therefore, "the similarity or dissimilarity of established, likely-to-continue trade channels . . . favor[ed] a finding of likelihood of confusion." J.A. 8–9. Considering the website evidence identified by the Board, we determine that a reasonable mind could accept that evidence as adequate to find that the consuming public is likely to be confused as to the origin of the goods and services, due to the marks' similarities of goods/services and similarities of trade channels.

On appeal, Laurel Designs argues that "there is no specific overlap between [its] services and those of the [C]ited [R]egistration." Appellant's Br. 18 ("[Laurel Designs'] store services do not include the goods listed under the registered mark's store services. And, the registered mark's store services do not include the goods listed under [Laurel Designs'] store services."). But our law does not require a specific overlap between services to find that *DuPont* factor 2 weighs in favor of a likelihood of confusion. *See Shen Mfg. Co. v. The Ritz Hotel Ltd.*, 393 F.3d 1238, 1244 (Fed. Cir. 2004) ("[G]oods that are neither used together nor related to one another in kind may still 'be related in the mind of the consuming public as to the origin of the goods. It is this sense of relatedness that matters in the likelihood of confusion analysis.'" (quoting *Recot, Inc. v. Becton*, 214 F.3d 1322, 1329 (Fed. Cir. 2000)).

Accordingly, there is substantial evidence in the record to support the Board's fact finding that ten online retailers carrying goods found in both the Application and the Cited Registration supported a finding of likelihood of confusion, and we see no legal error in its analysis.

Laurel Designs also makes two arguments related to the real-world conditions in which various goods are purchased and sold under the respective marks. First, Laurel Designs argues that because the glassware sold by Sazerac Brands LLC "is glassware featuring the mark SAZERAC prominently displayed on the glassware, unlike the cited [ten retail] websites which do not feature any such ornamental use of the respective marks," this evidence weighs against a likelihood of confusion. Appellant's Br. 24 (internal citation omitted). Second, Laurel Designs argues that because "[t]he 'SAZERAC STITCHES' consumer is making a much more calculated decision on committing to a much more substantial, permanent item (a piece of furniture, a light fixture, fabric) than the 'SAZERAC' consumer who is buying a coaster or a glass," the differences between those actual consumers "supports a finding that the trade channels and class of consumers associated with each mark are dissimilar." Appellant's Br. 27. These arguments, however, are unpersuasive given the inquiry at hand. "The relevant inquiry in an ex parte proceeding focuses on the goods and services *described in the application and registration*, and *not* on real-world conditions." *In re Detroit Athletic Co.*, 903 F.3d 1297, 1307 (Fed. Cir. 2018). Here, the goods and services described in the application include more casually purchased goods analogous to coasters and glasses, such as light bulbs, switches and cords, knobs, candle holders, tree skirts, planters, vases, rainbow decor items, serving trays, night lights, ornaments, bookends, and serving trays. Accordingly, the Board did not legally err when it focused on the goods and services in the Application and Cited Registration, rather than on real-world conditions.

For these reasons, we conclude that the Board's factual findings for *DuPont* factors 2 and 3 are supported by substantial evidence.

## II

We now address whether substantial evidence supports the Board's finding that, under the first *DuPont* factor, the marks in their entireties are similar in appearance, sound, connotation, and commercial impression. J.A. 11 (citing *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee en 1772*, 396 F.3d 1369, 1371 (Fed. Cir. 2005)); *DuPont*, 476 F.2d at 1361. We conclude that substantial evidence supports the Board's factual findings.

The Board first recognized that its analysis "cannot be predicated on dissecting the marks into their various components; the decision must be based on the entirety of the marks, not just part of the marks." J.A. 12 (citing *In re Nat'l Data Corp.*, 753 F.2d 1056, 1058 (Fed. Cir. 1985)). The Board ultimately found the marks similar under *DuPont* factor 1, and therefore likely to be confused, based on (1) the similarity "in sight and sound [of the marks] to the extent that they share the term SAZERAC," and (2) the marks' use "on related services . . . , engender[ing] the same connotation and commercial impression in each mark." J.A. 13.

In evaluating the similarity in sight and sound of the marks, the Board found that the mark SAZERAC is both subsumed into SAZERAC STITCHES and is the dominant portion of SAZERAC STITCHES. J.A. 12–13. And the Board found that, "because [SAZERAC STITCHES] subsumes [SAZERAC], consumers may very well perceive [SAZERAC STITCHES] as a variation of [SAZERAC], especially where Applicant's and Registrant's identified online retail store services are similar." J.A. 14.

On appeal, Laurel Designs argues that the Board erred because it did not "weigh [the] mark **in its entirety** as

precedent dictates." Appellant's Br. 11. It is true that marks must be weighed in their entireties, but as long as the Board's "ultimate conclusion regarding the likelihood of confusion rests on a consideration of the marks in their entireties," "[i]t is not improper for the Board to determine that, for rational reasons, it should give more or less weight to a particular feature" of a mark. *QuikTrip W., Inc. v. Weigel Stores, Inc.*, 984 F.3d 1031, 1035 (Fed. Cir. 2021) (cleaned up) (citation omitted). After review, we determine that the Board weighed SAZERAC STITCHES in its entirety and did not legally err by making a reasonable factual determination that SAZERAC is "dominant in [SAZERAC STITCHES] because it is the first term and the element most likely to be remembered." J.A. 12 (citing, e.g., *Palm Bay*, 396 F.3d at 1372 (finding the term VEUVE was the "'prominent feature' as the first word in the mark and the first word to appear on the label")).

Relatedly, we find Laurel Designs' reliance on *Shen* unavailing. Laurel Designs relies extensively on *Shen* to argue the Board improperly dissected its mark and failed to give "STITCHES" adequate weight. *See* Appellant's Br. 8–13. In *Shen*, when comparing marks "RITZ" and "PUTTING ON THE RITZ," the Board made a factual finding that the phrase "PUTTING ON THE RITZ" left consumers "with a distinct impression, specifically that of getting dressed up or of the song composed by Irving Berlin," and the Board ultimately determined there was no likelihood of confusion. 393 F.3d at 1242. We affirmed the Board, concluding that "PUTTING ON THE RITZ, when evaluated as a whole, conveys a strong commercial impression" that differed from the commercial impression conveyed by "RITZ" alone. *Id.* Here, the Board did not make a similar finding that SAZERAC STITCHES, when evaluated as a whole, has a strong commercial impression unlike that of SAZERAC alone, nor did Laurel Designs present such evidence. Given the evidence presented and the Board's finding that "SAZERAC" is dominant in SAZERAC

STITCHES because it is "the first term and the element most likely to be remembered," J.A. 12, we cannot say the Board's decision to accord "SAZERAC" more weight than "STITCHES" is unreasonable. And substantial evidence review requires only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, even if another reasonable mind could differ in its conclusion. Therefore, we conclude that the Board's factual findings for *DuPont* factor 1 are supported by substantial evidence.

### III

We now review the Board's weighing of the *DuPont* factors. Since the Board's factual findings for each *DuPont* factor considered are supported by substantial evidence, and all factors favored a likelihood of confusion, we affirm the Board's ultimate conclusion that "[Laurel Designs'] mark SAZERAC STITCHES is likely to cause confusion with the mark SAZERAC of the Cited Registration." J.A. 19; *see Dollar Fin. Grp.*, 132 F.4th at 1374 (affirming the Board's conclusion of likelihood of confusion when the Board determined each relevant *DuPont* factor either weighed in favor of confusion or was neutral).

### CONCLUSION

We have considered Laurel Designs' remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm the Board's decision.

### **AFFIRMED**

### COSTS

No costs.